hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Paul J. Yaeger, an attorney licensed to practice law in Louisiana but currently on interim suspension.
UNDERLYING FACTS AND PROCEDURAL HISTORY
In September 1997, pursuant to a petition for consent discipline, this court suspended respondent from the practice of law for eighteen months, with all but three months deferred, followed by a two-year period of supervised probation with conditions. In re: Yaeger, 97-1610, 97-1611, 97-1612 (La.9/5/97), 698 So.2d 951. In February 1999, the ODC filed a rule to revoke respondent’s probation after receiving complaints that he was practicing law during the period of his suspension. In March 1999, the rule to revoke probation was stayed when this court transferred respondent to disability inactive status, based on his allegation that he was severely depressed and unable to defend himself in the pending proceedings. At respondent’s request, he was reinstated to active status on October 4, 2000, thereby permitting the disciplinary proceedings to resume. In re: Yaeger, 00-2519 (La.10/4/00), 769 So.2d 1179.
Meanwhile, in April 1999, respondent was arrested and charged with felony theft in Jefferson Parish. He pleaded guilty to three counts of felony theft in February I ?,2000. Following the guilty plea, and respondent’s reinstatement to active status, he was placed on interim suspension based on his conviction of a serious crime. In re: Yaeger, 00-3523 (La.1/26/01), 777 So.2d 1220.
In March 2001, prior to the filing of formal charges, respondent and the ODC filed a joint petition for consent discipline. The parties proposed that respondent be disbarred for his criminal conviction as well as the misconduct at issue in some fifteen disciplinary investigations that were then pending. On August 1, 2001, the disciplinary board recommended that the petition for consent discipline be *573 accepted and that respondent be disbarred. On April 10, 2002, this court rejected the proposed consent discipline and remanded the matter for the institution of formal charges, with the instruction that on remand “the hearing committee and disciplinary board may consider recommendation of the sanction of permanent disbarment, if appropriate, pursuant to Supreme Court Rule XIX, §§ 10(a) and 24, as amended effective August 1, 2001.” In re: Yaeger, 01-2259 (La.4/10/02), 819 So.2d 278.
On August 14, 2002, the ODC filed fifteen counts of formal charges against respondent. Respondent answered the formal charges and essentially admitted his misconduct, but requested a hearing in mitigation. At the hearing, the parties entered into a joint stipulation in which respondent admitted to the misconduct as alleged in the formal charges. These stipulations may be summarized as follows:

Count I

In September 1997, respondent engaged in the unauthorized practice of law while he was suspended from practice. Respondent was notified of the complaint, but failed to respond, necessitating the issuance of a subpoena to compel his response.
The ODC and respondent stipulated that respondent’s conduct violated Rules 5.5(a) (engaging in the unauthorized practice of law), 8.1(c) (failure to cooperate with |3the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

Count II

Respondent settled a personal injury case for a client and withheld funds to pay the client’s medical provider, but nevertheless failed to pay the provider promptly. Respondent finally paid the medical provider $1,000, but the check, drawn on his client trust account, was returned NSF. Respondent was notified of the complaint, but failed to respond, necessitating the issuance of a subpoena to compel his response.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(b) (failure to promptly deliver funds to a client or third person), 8.1(c), and 8.4(g) of the Rules of Professional Conduct.

Count III

Respondent was retained to represent Denise Stewart in a personal injury matter. Respondent failed to keep his client informed about the case, including settlement offers. When respondent settled Ms. Stewart’s case, he withheld funds to pay her medical providers, but nevertheless failed to pay the providers promptly. Respondent also failed to promptly pay Ms. Stewart her portion of the settlement proceeds. He finally paid Ms. Stewart $4,361, but the check, drawn on his client trust account, was returned NSF. Respondent was notified of the complaint in this matter, but failed to respond, necessitating the issuance of a subpoena to compel his response. Respondent failed to appear.
|4The ODC and respondent stipulated that respondent’s conduct violated Rules 1.4 (failure to communicate with a client), 1.15(a), 1.15(b), 8.1(c), and 8.4(g) of the Rules of Professional Conduct.

Count TV

Respondent guaranteed payment following settlement of personal injury claims for several of his clients who were treated by Dr. James Jacobs. Respondent withheld sums for payment of the following: (a) Michele Brumfield — $2,513; (b) Brent Brumfield — $1,345; (c) Denise Stewart— $2,323; (d) Dusty Stewart — $1,288; (e) Shaun Stewart — $730; (f) medical rec *574 ordS' — $61.50; (g) Sabrina Lamonte — $978; and (h) Gary Lamonte — $75. Eventually, respondent paid the amounts owed by the Stewarts, but only after the checks, drawn on his client trust account, had been returned NSF. The other balances remain unpaid. In addition, in the case of each of the settlements listed, respondent failed to promptly pay his clients their portions of the settlement proceeds. Respondent was notified of the complaint in this matter, but failed to respond, necessitating the issuance of a subpoena to compel his response. Respondent failed to appear.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.15(a), 1.15(b), 8.1(c), and 8.4(g) of the Rules of Professional Conduct.

Count V

Between March and May 1999, respondent engaged in the unauthorized practice of law while he was on disability inactive status. Respondent also notarized the signature of a client on settlement documents ten days after the client’s death.
| sThe ODC and respondent stipulated that respondent’s conduct violated Rules 5.5(a) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count VI

Respondent was retained to represent Rose Dickerson in a personal injury matter. Respondent settled Ms. Dickerson’s case without her knowledge or consent and failed to promptly pay Ms. Dickerson her portion of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.8(k) (failure to obtain a client’s informed consent to settle a legal matter) and 1.15(a) of the Rules of Professional Conduct.

Count VII

On February 1, 2000, respondent pleaded guilty in the 24th Judicial District Court for the Parish of Jefferson to three felony counts of theft, violations of La. R.S. 14:67. In the first count, respondent pleaded guilty to the theft of more than $155,000 from Consumer Capital, Inc.; in the second count, respondent pleaded guilty to the theft of $4,000 from Pascal Taomino; in the third count, respondent pleaded guilty to the theft of $6,400 from Frank and Lil Ann Briscoe. All three counts involved respondent’s law practice.[1]
LThe ODC and respondent stipulated that respondent’s conduct violated Rule 8.4(b) (commission of a ciiminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.

Count VIII

Respondent engaged in the unauthorized practice of law while he was on disability inactive status. Respondent settled a case for Frank Briscoe but failed to promptly pay him his portion of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.15(a) and 5.5(a) of the Rules of Professional Conduct.

*575
Count IX

Respondent was retained to represent Marcel Teele in a personal injury matter. When respondent settled Mr. Teele’s case, he withheld funds to pay his medical providers, but nevertheless failed to pay the providers promptly. Respondent also failed to promptly pay Mr. Teele his portion of the settlement proceeds. In addition, respondent neglected several other matters entrusted to him by Mr. Teele, including a workers’ compensation claim and a child support matter. Respondent failed to keep his client informed about his cases.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.3 (neglect of a legal matter), 1.4, 1.15(a), and 1.15(b).

\'¡Count X

Respondent was retained to represent Geanine Ann Mustaiche in a personal injury matter. Respondent neglected the case, did not move it forward, and failed to keep his client informed about the case.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.

Cotmt XI

Respondent was retained to represent Kathryn Zitzmann in a personal injury matter. Respondent failed to pursue the case diligently, resulting in a loss of Ms. Zitzmann’s right to pursue her claim against some defendants, and failed to keep his client informed about the case. On two occasions, respondent received partial settlements for Ms. Zitzmann, but he failed to promptly pay Ms. Zitzmann her portion of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.3, 1.4, and 1.15(a) of the Rules of Professional Conduct.

Count XII

Respondent settled personal injury claims on behalf of Yolanda Yaeger and Lisa Thompson for $40,000 and $11,500, respectively. Respondent failed to notify his clients of the settlements and failed to promptly pay his clients their portions of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.8(k) and 1.15(a) of the Rules of Professional Conduct.
| fPount XIII
Respondent was retained to handle a legal matter on behalf of Tyrone Fletcher. Respondent neglected the matter, failed to keep his client informed about the case, and failed to comply with a request to return the client’s file.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.3, 1.4, and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.

Count XIV

Respondent was retained to represent Sabrina Lamonte in a personal injury matter. When respondent settled Ms. La-monte’s case, he withheld funds to pay her medical provider, but nevertheless failed to pay the provider promptly. Respondent also failed to promptly pay Ms. Lamonte her portion of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct.

Count XV

Respondent settled a personal injury claim on behalf of Richard Kramer for $3,500. Respondent failed to notify his client of the settlement and failed to *576 promptly pay his client his portion of the settlement proceeds.
The ODC and respondent stipulated that respondent’s conduct violated Rules 1.8(k), 1.15(a), and 8.4(c) of the Rules of Professional Conduct.
11,DISCIPLINARY PROCEEDINGS

Formal Hearing

Respondent presented mitigating evidence at the formal hearing. In particular, respondent testified that he has suffered from anxiety and severe depression since 1995. Respondent stated that he did not initially seek treatment for his condition, but instead self-medicated with alcohol, which “only exacerbated the symptoms and made my life completely miserable'.” After two failed suicide attempts, respondent finally sought psychiatric help in mid-1998, and he was admitted to DePaul Hospital for intensive inpatient treatment in 1999. Since that time respondent has learned to manage his condition and has resumed a functioning life; he is presently employed as an able-bodied seaman and is working to obtain his captain’s license to operate offshore- oilfield supply vessels. Respondent testified that he accepts responsibility for his actions and made restitution to the individuals he harmed. Respondent is currently paying court-ordered restitution of $1,500. per month to. the finance company that was a victim of his criminal conduct.

Hearing Committee Recommendation

The hearing committee accepted the stipulated facts and rule violations and determined that the applicable baseline sanction for respondent’s misconduct is permanent disbarment. The committee found the ODC proved by clear and convincing evidence that respondent engaged in repeated or multiple instances of intentional conversion of client funds which caused substantial harm (Guideline 1 of the permanent disbarment guidelines set forth in Appendix E of Supreme Court Rule XIX), and that he engaged in the unauthorized practice of law after being suspended |inby this court (Guideline 8). Nevertheless, considering the mitigating factors present,[2] the committee recommended that respondent be disbarred.
The ODC filed an objection to the hearing committee’s failure to recommend permanent disbarment.

Disciplinary Board Recommendation

The board found that in committing the stipulated misconduct, respondent intentionally violated duties owed to his clients, the public, and as a professional. He caused injury to numerous clients and to third parties by depriving them of their funds. Respondent settled the claims of several clients without their knowledge or consent and converted the funds. He pleaded guilty to theft of more than $165,000. Although all individuals have now been paid, the receipt of funds was delayed. At least one client lost her legal right to pursue claims against certain defendants. By his criminal conduct, respondent caused injury to the profession and placed an added burden on the criminal justice system, causing injury to the public. He also damaged the profession by his initial failure to cooperate with the ODC, placing an added burden on the *577 disciplinary system, and by engaging in the unauthorized practice of law. The board determined that the baseline sanction for respondent’s misconduct is disbarment.
The board recognized the mitigating factors found by the hearing committee, and agreed that those factors are supported by the record. However, the board disagreed that these mitigating factors justify the imposition of disbarment rather than permanent disbarment. In light of “the nature and extent of the misconduct, the large Innumber of victims, the significant amount of funds involved, the apparent lack of respect for the authority of the Court evidenced by the unauthorized practice of law, and the criminal conviction,” the board concluded that nothing less than permanent disbarment is warranted in this case.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
In light of the joint stipulation between respondent and the ODC, the allegations of the formal charges were proven by clear and convincing evidence. Accordingly, the only issue presented for our determination is the appropriate sanction for respondent’s misconduct. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent has stipulated to his criminal conviction for theft and the fact that he engaged in the unauthorized practice of law while he was suspended and while he was on disability inactive status, as well as other serious misconduct including neglect of legal matters, failure to communicate with his clients, commingling and conversion of client and third-party funds, and failure to cooperate with the ODC. The baseline sanction for this egregious misconduct is unquestionably disbarment. \n However, the disciplinary board urges us to go further and consider permanently prohibiting respondent from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
Applying those guidelines to the instant case, we find respondent’s conversion of client and third-party funds falls within the scope of Guideline 1, which applies to “Repeated or multiple instances of intentional conversion of client funds with substantial harm.” Likewise, we find his decision to engage in the unauthorized practice of law following his 1997 suspension implicates Guideline 8 (“Following notice, engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred”). While some mitigating factors are present, they pale in comparison to the seriousness of respondent’s misconduct and the harm that he has visited upon his clients, the public, and the legal profession.
*578 Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Paul Joseph Yaeger, Louisiana Bar Roll number 1656, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. 11S Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Ail costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Specifically, in connection with the first count, respondent obtained a line of credit from a finance company that was secured by his pending personal injury cases, but when those cases settled, he failed to remit the appropriate funds to the finance company to repay the debt. In connection with the second and third counts, respondent failed to remit settlements to two clients. In May 2000, respondent was sentenced to five years in prison at hard labor, suspended, and five years active probation, and was ordered to pay restitution to his victims.

. The committee found the following mitigating circumstances: personal and emotional problems, mental impairment, timely good faith effort to make restitution and to rectify the consequences of the misconduct, full and free disclosure to the ODC and a cooperative attitude toward the proceedings, delay in the disciplinary proceedings, imposition of other penalties or sanctions, and remorse. The committee made no finding concerning aggravating factors.