*1142 |,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Dwayne V. Williams, a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1987. In June 2001, the disciplinary board publicly reprimanded respondent for failing to properly supervise a non-lawyer assistant, and for failing to cooperate with the ODC in its investigation. One month later, in July 2001, the disciplinary board admonished respondent for failing to cooperate with the ODC.
In 2004, the ODC filed three counts of formal charges against respondent alleging he disobeyed court orders regarding his child support obligation, tampered with an accident report, failed to cooperate with the ODC’s investigation, and practiced law while ineligible to do so. We determined that these charges were proven by clear and convincing evidence. Based on our finding that respondent committed “egregious and persistent misconduct,” we disbarred respondent. In re: Williams, 04-1364 (La.10/15/04), 885 So.2d 519 (“Williams /”). He has remained disbarred since that time.
*1143 | ¿Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The instant proceeding consists of three separate sets of formal charges (04-DB-070, 05-DB-066 and 06-DB-005) filed by the ODC against respondent. These charges, encompassing a total of ten counts of misconduct, are summarized as follows:

0b.-Dtí-070

Count I — The Washington Matter
In March 2002, Terry Washington paid respondent $300 to represent him on several misdemeanor charges and to clear up a detainer at the corrections facility where he was incarcerated. Respondent completed no work on Mr. Washington’s behalf. Despite numerous attempts, neither Mr. Washington nor his family members were able to communicate with respondent. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Washington.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(6) (failure to refund an unearned fee), 1.16(d) (obligations upon termination of the representation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
_J«Count II — The Banks Matter
In April 2000, Robert Lee Banks paid respondent $1,300 to represent him in a criminal matter. Respondent appeared at the courthouse to advise Mr. Banks to plead guilty, then left his client alone in the courtroom. Respondent performed no other work for his client. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Banks.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, and 8.4(g).

05-DB-066

Count I — The Thomas Matter
In June 2004, Pamela Thomas paid respondent $500 to secure the release of her son, Stephen Thomas, from jail. Respondent made several unfulfilled promises to Ms. Thomas about her son’s release date, then appeared at a scheduled court date one hour late, again promising her son’s release that day. Stephen Thomas was not released from jail, and advised his mother he had never seen or spoken to respondent before the court date. Despite several attempts, Ms. Thomas was unable to contact respondent, and respondent did not comply with her written request for a refund and copy of her contract. The ODC learned that Stephen Thomas remained in jail for six months. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Thomas.
The ODC alleges that respondent’s conduct violated the following provisions ■ of the Rules of Professional Conduct: Rules 1.3, 1.4, and 8.1(c) (failure to cooperate with the ODC in its investigation).
14Count II — The Arevalo Matter
In October 2003, Deyla Arevalo paid Collier Bonding (“Collier”) to bond her husband, Jesus Garza, out of a Baton Rouge jail on a marijuana possession charge. Without the knowledge of Ms. Arevalo or Mr. Garza, Collier paid $500 to respondent to represent Mr. Garza at a bond reduction hearing. Mr. Garza was released a month later, and he and his wife *1144 returned to their home in Texas. Three months later, Ms. Arevalo received notice from the court that Mr. Garza failed to appear at a scheduled court date. Ms. Arevalo complained to Collier, which blamed respondent. Mr. Garza was subsequently arrested when he went to Baton Rouge to obtain a new court date. In answering the disciplinary complaint, respondent admitted being paid by Collier to represent Mr. Garza, but claimed Mr. Garza had received notice of the hearing date when he appeared for the bond reduction hearing. Despite numerous requests by the ODC, respondent failed to provide the evidence of this notice.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.8(f)(1) (prohibited transactions/compensation from a third party without the informed consent of the client), and 8.1(c).
Count III — The Boyd Matter
On October 8, 2004, Térrica Boyd paid respondent $500 to represent her boyfriend, Ben Hawkins, at a bond reduction hearing. Ms. Boyd paid an additional $250 to respondent on October 18, 2004, but respondent failed to appear for the scheduled hearing on October 19, 2004. Respondent did not return Ms. Boyd’s telephone calls. After the disciplinary complaint was filed, respondent claimed that the bond reduction was denied by the judge, and that he provided Ms. Boyd with a | ¿refund. Respondent failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Boyd.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, and 8.1(c).
Count IV — The Travis Matter
In September 2004, Patricia Travis paid respondent $400 to represent her son, Christopher Moore, in a criminal matter. After paying the fee, Ms. Travis stated she was never able to contact respondent, who failed to appear for a scheduled court date. Eventually a public defender was appointed, and Ms. Travis was able to obtain a refund of the $400 from Collier Bonding, who referred her to respondent. Respondent failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Travis.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, and 8.1(c).
Count V — The Wells Matter
Respondent’s disbarment in Williams I became effective on October 29, 2004. Nevertheless, on November 12, 2004, respondent accepted a $500 legal fee from Michael Wells for the purpose of filing a bankruptcy proceeding on Mr. Wells’ behalf. Upon learning that nothing had been filed with the bankruptcy court on his behalf, and that respondent had been disbarred, Mr. Wells made many unsuccessful attempts to contact respondent. Mr. Wells was forced to hire and pay another attorney to handle the case. In a sworn statement, respondent had no explanation for accepting the money while disbarred, but agreed to refund the fees within twenty | fidays. Despite respondent’s statement, there is no evidence that Mr. Wells ever received a refund. Respondent took no steps to resolve or respond to the disciplinary complaint.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a) (engaging in the unauthorized practice of law), 8.1(c), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
*1145 Count VI — The Stirgus Matter
In December 2004, long after the effective date of his disbarment in Williams I, respondent accepted a $150 legal fee from Aneatra Stirgus for the purpose of drafting legal documents to access her deceased mother’s safe deposit box. As of February 2005, neither Ms. Stirgus nor the bank has been able to contact respondent, despite numerous attempts. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Stirgus.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a), 8.1(c), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

06-DB-005

Count I — The Chaney Matter
In September 2004, Chantal Chaney paid respondent $500 to represent her in a child support matter. Despite numerous attempts, Ms. Chaney was unsuccessful in contacting respondent for the status of her case, and she subsequently learned that respondent was disbarred. Ms. Chaney did not receive any legal services for the |7money paid. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Chaney.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5(f)(5), 1.16(d), and 8.1(c).
Count II — The Payton Matter
In July 2004, George Payton paid respondent $500 to represent him in a criminal matter. Respondent advised Mr. Pay-ton that he would secure an agreement with the District Attorney’s office to drop or reduce the charges. Two days prior to the scheduled trial, respondent told Mr. Payton the charges would not be dropped, but for an additional $500 he would beat the charges at trial. Mr. Payton was unsuccessful in his attempts to contact respondent for trial preparation; as a result, no witnesses were called to testify on Mr. Payton’s behalf at trial. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Payton.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5(f)(5), and 8.1(c).
DISCIPLINARY PROCEEDINGS
Respondent failed to answer or otherwise reply to the three sets of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary |sevidence on the issue of sanctions. Respondent filed nothing for the hearing committees’ consideration.

Hearing Committee Reports

Ok-DB-070

The hearing committee considering this set of charges determined that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). The committee also determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. As a sanction, the committee recommended that respondent be suspended from the practice of law for a period of two years.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

*1146
05-DB-066 & 06-DB-005

After considering the ODC’s submission and the deemed admitted factual allegations, the hearing committee considering these consolidated charges found that respondent violated the Rules of Professional Conduct as alleged in the formal charges. In light of the seriousness of respondent’s conduct in practicing law after his disbarment in Williams I, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
| flDisciplinary Board Recommendation
The recommendations of the hearing committees were consolidated for review before the disciplinary board. After review of the consolidated matters, the disciplinary board concurred in the findings of the hearing committees that respondent violated the Rules of Professional Conduct as charged, and that the charges were deemed admitted and proven by clear and convincing evidence.
The board found that respondent violated duties owed to his clients, the public, and the profession. It determined respondent knowingly failed to communicate with and neglected eight clients, and intentionally accepted money from a third party without the client’s consent. It further found that respondent failed ' to refund money to three clients, failed to respond to complaints or cooperate with the ODC’s investigation in ten cases, and engaged in the unauthorized practice of law when he accepted the representation of two clients following his disbarment in Williams I. The board noted respondent’s clients suffered actual harm as a result of being deprived of fees they paid, having resolution of them cases delayed, and being deprived of representation by a licensed lawyer. It also recognized the disciplinary system was harmed by respondent’s failure to cooperate, because the ODC was required to expend additional resources to personally serve respondent with formal charges and subpoenas. Considering these findings, the board concluded the baseline sanction for respondent’s misconduct is disbarment.
The board found that the record supports the aggravating factors, of prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the hnvictims, substantial experience in the practice of law (admitted 1987), and indifference to making restitution. The board found no mitigating factors.
Under these circumstances, the board determined that the appropriate sanction for respondent’s misconduct is permanent disbarment. The board further recommended that respondent be ordered to provide an accounting and/or make appropriate restitution to his clients, and that he be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest *1147 error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 688 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We find the record supports the factual findings of the hearing committees. The uncontroverted evidence in the record is replete with professional violations by respondent, including his failure to act with reasonable diligence and promptness in representing clients, his failure to communicate with his clients, his failure to comply with his obligations upon the termination of the representation, and his failure to |nreturn unearned fees. Even more egregious are respondent’s actions involving the unauthorized practice of law, accepting compensation for representing a client without the client’s consent, engaging in dishonest and deceitful conduct, and failing to cooperate with the investigation of disciplinary matters.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record demonstrates in a clear and convincing fashion that respondent knowingly and intentionally violated duties owed, and caused harm to clients, the public, the legal system, and the profession. Numerous aggravating factors are present: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. We are unable to discern any mitigating factors from the record. Under these circumstances, we must conclude the appropriate sanction for respondent’s misconduct is disbarment.
The sole remaining issue presented for our consideration is whether respondent’s conduct is so egregious that he should be prohibited from seeking readmission to the practice of law. In Appendix E to Supreme Court Rule XIX, we 112set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. See In re: Yaeger, 05-0035 (La.3/18/05), 897 So.2d 571.
Applying the guidelines to the instant case, we find respondent’s misconduct falls within the scope of Guideline 8, which involves “engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred.” Additionally, we find the serious misconduct at issue in the instant case was preceded by the serious misconduct which formed the basis of Williams I. Accordingly, Guideline 9, which addresses “instances of serious attorney misconduct ... preceded by suspension or disbarment for prior instances of serious attorney misconduct ...,” is applicable.[1]
*1148 In sum, the nature of the misconduct, coupled with respondent’s obvious indifference to legal ethics and the welfare of his clients, convincingly establishes that he does not possess the moral fitness to practice law, and that he poses a threat of danger to the public in the event he is permitted to resume practicing law. Accordingly, we must permanently disbar respondent.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that the name of Dwayne V. Williams, Louisiana Bar Roll number 18044, be stricken from the roll of | ^attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to furnish complete accountings and full restitution to all persons subject of the formal charges. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. "Serious attorney misconduct" is defined for purposes of the guideline as “any misconduct which results in a suspension of more *1148 than one year.” Respondent's misconduct in Williams I, which resulted in disbarment, falls within this definition.