976 So.2d 152 (2008)
In re Michelle D. McKEE.
No. 2007-B-1381.
Supreme Court of Louisiana.
February 1, 2008.
Rehearing Denied March 14, 2008.
*153 PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Michelle D. McKee, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent, consisting of a total of nine counts of misconduct. The charges were considered by separate hearing committees, then consolidated by order of the disciplinary board. The board then filed in this court a single recommendation of discipline encompassing both sets of formal charges.

05-DB-002

Count I  The Haydel-Harris Matter
In November 2001, respondent settled a personal injury claim for Sheryll Harris and withheld the sum of $2,165.40 to pay Dr. Michael Haydel, Ms. Harris' medical provider. However, Dr. Haydel did not receive payment from respondent for his services until July 2003, several months after the ODC received complaints from both Dr. Haydel and Ms. Harris. In August 2003, respondent gave a sworn statement to the ODC in which she admitted that she had converted the funds withheld from Ms. Harris' settlement which were intended for Dr. Haydel.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.15 (safekeeping property of clients or third persons), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*154 Count II  The Bankruptcy Matters

In November 2003, the United States Trustee filed a complaint against respondent with the ODC, alleging that she failed to act with proper diligence in the representation of her clients during bankruptcy proceedings, failed to properly disclose attorney's fees paid by her clients,[1] and provided the court with false and misleading information. In addition, after her own personal bankruptcy proceeding was dismissed with prejudice, respondent filed a second petition for bankruptcy in violation of the court's order prohibiting her from doing so for a period of time.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 3.3 (candor toward the tribunal), and 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal).

Count III  The Espinosa Matter
In December 2002, respondent entered into an agreement with Celso and Yolanda Espinosa to purchase their home in New Orleans. The act of sale was set for January 31, 2003, at which time respondent was required to pay the Espinosas $72,718.98 in certified funds. At the closing, respondent did not have certified funds but wrote a personal check in that amount. In an attempt to prove that the check was good, respondent produced documentation purporting to show that she had obtained a $529,000 default judgment on behalf of a client in a personal injury case. However, respondent failed to disclose to the Espinosas that the default judgment had been set aside on September 24, 2002 because the defendant in the case was in bankruptcy.
Based upon the documentation provided by respondent, and her representation that her fee due from the personal injury case was more than sufficient to pay the $72,718.98 she needed to complete the sale, Mr. and Mrs. Espinosa granted respondent an extension until February 5, 2003 to produce the required certified funds. This date passed and no payment was made. The Espinosas then requested that respondent, who had already moved into the home, vacate the premises. Respondent refused to do so, forcing Mr. and Mrs. Espinosa to retain counsel to institute an eviction proceeding.[2] Respondent was ultimately physically evicted from the property on March 17, 2003.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rule 8.4(c).

Count IV  The Uni-Copy Matter
In February 2004, respondent purchased a copy machine for her law office from Uni-Copy Technologies, Inc. At this time, respondent no longer maintained an operating account, so she paid for her purchase with three post-dated checks drawn on her client trust account, each in the amount of $363.33. The checks were subsequently returned for insufficient funds.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.15, *155 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c).

Count V  The Steward Matter
In August 2002, Helen Steward retained respondent to file a petition for bankruptcy on her behalf. Ms. Steward paid respondent $633 towards a $700 fee to handle the matter, however, respondent failed to file the bankruptcy pleadings. She also failed to communicate with Ms. Steward and moved her law office without leaving a forwarding address.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3 and 1.4 (failure to communicate with a client).

Count VI  The Bradford Matter
In August 2002, Betty Bradford retained respondent to file a petition for bankruptcy on her behalf. Ms. Bradford paid respondent $1,300. Respondent filed the bankruptcy pleadings but thereafter she failed to communicate with Ms. Bradford regarding the matter. In January 2004, Ms. Bradford's bankruptcy proceeding was dismissed on motion of the Chapter 13 trustee because respondent failed to appear for hearings in the matter.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3 and 1.4.

06-DB-001

Count I  The Durel Matter
In November 2003, respondent settled Mary Durel's personal injury claim for the sum of $2,000. Respondent retrieved the settlement check from opposing counsel on December 17, 2003, the same day that Mrs. Durel died.[3] Respondent then endorsed Mrs. Durel's signature on the check and negotiated it. She also failed to return the settlement documentation to opposing counsel. When questioned about the matter, respondent admitted that she had settled her client's claim without authority, endorsed the settlement check without authority, and converted the funds.
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.15, 8.4(a), and 8.4(c).

Count II  The Grady Matter
In 2002, Betty Grady retained respondent to represent her in a personal injury matter. At respondent's suggestion, Ms. Grady obtained loans on her case totaling approximately $4,500; respondent then persuaded Ms. Grady to give her one-half of the loan proceeds for her personal use. Respondent has not repaid this sum. After a lengthy period of no communication and no information about the progress of her case, Ms. Grady discharged respondent in writing. She also made repeated requests to respondent for her file so that she could secure the services of a new attorney. However, respondent failed to comply with Ms. Grady's requests.[4]
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d) (obligations upon termination of the representation), and 8.4(a).

*156 Count III  The Misuraca Matter

In May 2003, respondent hired Guy Misuraca to perform a home inspection. The $225 check respondent issued to Mr. Misuraca was returned for insufficient funds. Respondent promised to issue a new check and to reimburse the bank service charges, but she failed to do so.[5]
The ODC alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).
DISCIPLINARY PROCEEDINGS:
Respondent was personally served with both sets of formal charges. She filed answers to the formal charges as well as memoranda in which she largely admitted the alleged misconduct. The matters then proceeded to formal hearings.

Hearing Committee Reports

05-DB-002
After considering the evidence and testimony presented at the hearing, the hearing committee found that all facts were proven by the ODC, and were not refuted by respondent. The committee found that respondent violated the Rules of Professional Conduct as charged in the formal charges (with the exception of the Rule 8.4(a) violation charged in Count IV, the Uni-Copy matter, which the committee's report did not address).
In determining the appropriate sanction, the committee considered in mitigation respondent's testimony that she was going through a divorce and suffering from depression at the time of the violations,[6] her payment of restitution to Dr. Haydel (Count I), her cooperation with the ODC in its investigation, and her remorse. The committee also noted that most of the violations were related to respondent's lack of training, experience, and failure to have a mentor assist her in learning the practice of law.[7]
Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for three years.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

06-DB-001
After considering the evidence and testimony presented at the hearing, the hearing committee found that all facts were proven by the ODC, and were not refuted by respondent. The committee found that respondent violated the Rules of Professional Conduct as charged in the formal charges (with the exception of the Rule 8.4(c) violation charged in Count III, the Misuraca matter, which the committee's report did not address).
The committee found that respondent intentionally violated duties owed to her clients and to the public, causing actual *157 harm. The committee determined that the following aggravating factors are present: dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution.[8] The sole mitigating factor acknowledged by the committee was "Respondent's remorse in causing harm to her clients."
Based on these findings, the committee recommended that respondent be disbarred.
The ODC filed an objection to the hearing committee's recommendation, urging that permanent disbarment is appropriate.

Disciplinary Board Recommendation
After reviewing the consolidated matters, the disciplinary board agreed that respondent violated the Rules of Professional Conduct as charged in both sets of formal charges. The board noted that respondent converted funds in four of the nine counts charged against her, and that she still owes restitution in three of those matters. Particularly troubling to the board was respondent's conversion of settlement funds of her deceased client Mrs. Durel, and respondent's continued neglect of her obligation to make restitution to the heirs.
In its determination of the aggravating and mitigating factors, the board considered respondent's indifference to making restitution,[9] and the existence of personal and emotional problems.[10] The board recommended permanent disbarment for respondent's repeated or multiple instances of intentional conversion of client funds with substantial harm.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We find that the record in this matter supports the factual findings of the hearing committee and disciplinary board. Respondent violated multiple Rules of Professional Conduct by failing to act with reasonable diligence and promptness in her various representations, failing to communicate with her clients, failing in her obligations upon termination of representation, *158 commingling and converting client funds, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, lacking candor toward the tribunal, failing to obey an obligation under the rules of a tribunal, and committing a criminal act reflecting adversely on her honesty, trustworthiness, or fitness as a lawyer. Respondent knowingly and intentionally violated duties owed, and caused harm to clients, the public, the legal system, and the profession.
In determining the appropriate sanction for respondent's misconduct, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The aggravating factors present are a pattern of misconduct, multiple offenses, dishonest or selfish motive, vulnerability of the victims, and indifference to making restitution. In mitigation, we note that respondent has no prior disciplinary record and that she has expressed remorse for her misconduct. Although respondent made restitution to two of the four third parties she harmed, her acts of restitution were far from timely to qualify as a mitigating factor. One restitution was paid two years after settlement funds were received. The other restitution was paid three years after the initial writing of the worthless check, and only after action was taken by the District Attorney's office and there had been a hearing in the disciplinary proceeding.
The record overwhelmingly supports a finding of professional misconduct that is of the most serious nature. Respondent has engaged in a chronic pattern of converting funds for her personal use, writing worthless checks, and accepting legal representations when she had no apparent intention of rendering services or communicating with her clients in the future. Respondent failed to follow court rules, and attempted to circumvent court rules. She has refused to refund unearned legal fees, and failed to make restitution to clients and to all third parties she has harmed. Respondent's intentional actions often resulted in severe, if not irreparable harm to her clients. We agree with the board that the most troubling example of harm is in the Durel matter, in which respondent converted settlement funds of a deceased client. Respondent has not made an accounting or paid restitution to the Durel heirs for the funds she converted, simply stating that she used the money to pay personal doctor bills. Restitution is also owed to Unicopy, Ms. Steward, Ms. Bradford, and to Ms. Grady.
Therefore, the question for the court's consideration is whether respondent's conduct is so egregious that she should be prohibited from seeking readmission to the practice of law. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. See In re: Yaeger, 05-0035 (La.3/18/05), 897 So.2d 571.
Applying the guidelines to this case, we find that respondent's misconduct falls squarely within the scope of Guideline 1, which involves repeated or multiple instances *159 of intentional conversion of client funds with substantial harm. The nature of the misconduct, coupled with respondent's demonstrated indifference for the welfare of her clients, convincingly establishes that she does not possess the moral fitness to practice law, and that she poses a threat of danger to the public in the event she is permitted to resume practicing law. Respondent has disregarded and ignored her obligation to uphold the high standards of honesty and righteousness that she assumed when she took the oath as a member of the bar of this state. Louisiana State Bar Ass'n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). She has used her law license not to foster the high standards of the profession, but to exploit her clients for her own benefit.
Under the circumstances of this case, the imposition of any sanction less than permanent disbarment would require us to ignore the seriousness of respondent's conduct, and the grave harm she has done to her victims and to the public's confidence in the legal profession. We will therefore accept the disciplinary board's recommendation and permanently disbar respondent. We will further require that respondent make an accounting and appropriate restitution to her clients and third parties.

DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Michelle D. McKee, Louisiana Bar Roll number 24750, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to provide complete accountings and full restitution to all persons subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] The ODC's investigation revealed that respondent collected attorney's fees from her clients, then filed bankruptcy pleadings seeking permission to pay filing fees in installments, falsely representing that she had not received any attorney's fees. Under the Federal Rules of Bankruptcy Procedure, counsel for a debtor may not accept attorney's fees prior to the payment in full of the filing fees.
[2] Due to respondent's actions, the Espinosas had to make repairs to their property, pay additional payments on their mortgage and for insurance premiums, and incurred several thousand dollars in legal fees for the eviction. The Espinosas eventually sold their home for $3,000 less than the amount respondent had agreed to pay.
[3] Hearing testimony revealed that Ms. Durel passed away at 7:00 a.m., and the settlement check and papers were retrieved from opposing counsel's office sometime after 8:00 a.m. Opposing counsel testified he would ordinarily use the mail, but respondent "seemed to be in a little bit of a hurry," so he agreed to leave the settlement documents at his reception desk.
[4] After significant delay, Ms. Grady eventually received a portion of her file by fax from respondent.
[5] As of the date of the filing of the formal charges, Mr. Misuraca had not received payment for his services. In April 2006, respondent paid $244.65 in restitution to Mr. Misuraca through the Orleans Parish District Attorney's Office.
[6] The hearing committee noted that there was no evidence respondent received treatment for depression, but they found her testimony credible. By letter to the ODC after the formal hearing, respondent claimed to have been counseled at a pastoral counseling center, but was unable to obtain any records.
[7] Respondent testified that she worked as a legal secretary while attempting to pass the bar, and later opened her own practice. The committee stated "it does not appear that respondent ever had any type of guidance to assist her with the intricacies and rigors of a general civil practice."
[8] The committee also found in aggravation that respondent has a prior disciplinary record; however, it appears the committee was referring to the recommendation of discipline filed in the first set of formal charges.
[9] The board noted that respondent has made restitution for "some" of the payments she owes; however, as noted by the ODC, this restitution was not made willingly, but rather was forced by the disciplinary proceedings and the threat of charges by the District Attorney's Office.
[10] The board noted that respondent produced no medical records of her mental condition, but demonstrated the existence of depression, marriage difficulties, and financial troubles during the periods of misconduct.