*1164
 
 | ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Andrew Charles Engolio, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Engolio,
 
 05-0648 (La.3/16/05), 896 So.2d 984.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 The ODC filed two sets of formal charges against respondent, consisting of a total of sixteen counts of misconduct. The two sets of formal charges were considered by separate hearing committees before being consolidated by the disciplinary board, which then filed in this court a single recommendation of discipline encompassing both sets of formal charges.
 

 06-DB-071
 

 Count I
 

 In January 2002, Adelle Robinson hired respondent to handle her Chapter 7 bankruptcy. Respondent filed the bankruptcy petition in February 2002 and attended the creditors’ meeting in March 2002. Thereafter, over the period of one year, respondent failed to communicate with Ms. Robinson.
 

 |2In October 2002, Ms. Robinson filed a complaint against respondent with the ODC. Respondent failed to file a written response. However, he did appear for a sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.
 

 Count II
 

 In July 2001, John Robert Jones, Jr. hired respondent to handle his divorce. Respondent collected a $700 fee. Respondent filed the petition for divorce and an amended petition for divorce but did not obtain the judgment of divorce, despite Mr. Jones’ numerous requests to do so. Respondent also failed to communicate with Mr. Jones. Consequently, in July 2003, Mr. Jones discharged respondent and requested a refund of the fee he paid. Mr. Jones also hired a new attorney, who obtained the judgment of divorce in August 2003. Respondent refunded the unearned fee to Mr. Jones in October 2003.
 

 In April 2003, Mr. Jones filed a complaint against respondent with the ODC. Respondent failed to file a written response. However, he did appear for a sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 8.1(c), 8.4(a), and 8.4(d) (engaging in conduct prejudicial
 
 *1165
 
 to the administration of justice) of the Rules of Professional Conduct.
 

 |
 
 «Count III
 

 In April 2001, Shirley Barnes hired respondent to handle her divorce and community property settlement, paying him $700. She informed respondent that her husband was incarcerated and would not contest the divorce. Respondent filed the petition for divorce in June 2001. Thereafter, Ms. Barnes spoke with respondent twice, but otherwise respondent failed to communicate with her despite her repeated telephone calls. In September 2002 and January 2004, respondent informed Ms. Barnes he had been unable to serve her husband even though he was still in jail. In March 2004, attorney David Lambert, on behalf of Ms. Barnes, requested that respondent refund the $700 to Ms. Barnes. Respondent failed to do so and did not provide an accounting.
 

 In June 2004, Ms. Barnes filed a complaint against respondent with the ODC. Although he filed a written response to the complaint, respondent failed to appear for a sworn statement despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5 (fee arrangements), 1.16(d) (obligations upon termination of the representation), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
 

 Count IV
 

 In January 1999, respondent agreed to represent Robert Garcia in five collection matters. Respondent took possession of Mr. Garcia’s original documents and agreed to forward copies of the documents to Mr. Garcia. In March 1999, respondent informed Mr. Garcia that he had filed the requested lawsuits and requested that Mr. Garcia reimburse him for the filing costs. In late 1999, respondent informed Mr. Garcia that he was no longer handling new lawsuits as he was focusing Ron bankruptcy matters. Mr. Garcia believed respondent would continue to represent him in the five collection matters, but respondent neglected the matters. Respondent also failed to communicate with Mr. Garcia. Furthermore, he failed to provide Mr. Garcia with his original documents, making it difficult for him to obtain new counsel.
 

 In August 2004, Mr. Garcia filed a complaint against respondent with the ODC. Respondent failed to file a written response and did not appear for a sworn statement despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.15(a) (safekeeping property of clients or third parties), 1.16(d), 8.1(c), 8.4(a), and 8.4(d) of the Rules of Professional Conduct.
 

 Count V
 

 In March 2004, Elliot Marigny, III, hired respondent to handle his bankruptcy. At the time, respondent was employed by the law firm of Derren S. Johnson & Associates. Mr. Marigny paid respondent a total of $666. Respondent filed the Chapter 13 bankruptcy petition on March 26, 2004. The creditors’ meeting was scheduled for May 12, 2004. On June 1, 2004, the bankruptcy court denied the confirmation for failure to establish a payment plan. During the representation, Mr. Marigny unsuccessfully attempted to contact respondent on several occasions. When he received the bankruptcy dismissal order, Mr. Marigny again tried to contact respondent for an explanation, but respondent failed to communicate with him. Furthermore, Mr. Marigny paid funds to respondent for his mortgage and Chapter 13 plan, but the funds were misappropriated. The law firm of Derren S. Johnson
 
 &
 
 Associates eventually reimbursed Mr. Marigny $666.
 

 
 *1166
 
 |Jn August 2004, Mr. Marigny filed a complaint against respondent with the ODC. Respondent failed to file a written response and did not appear for a sworn statement despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
 

 Count VI
 

 In April 2003, Joel Tally hired respondent to obtain a temporary restraining order (“TRO”) against his neighbor. He paid respondent an $800 fee. Respondent filed the TRO in August 2003 and later amended it. The defendant was served, and a court date was set. However, respondent removed the case from the docket without the client’s consent or knowledge and failed to reschedule the hearing. In October 2004, Mr. Tally discharged respondent and requested, in writing, the return of his file and all attorney’s fees. Respondent failed to return any unearned fees or the file.
 

 In December 2004, Mr. Tally filed a complaint against respondent with the ODC. Respondent failed to file a written response and did not appear for a sworn statement despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
 

 Count VII
 

 In October 2004, Rhonda Billoups hired respondent to handle a separation of property agreement, paying him $500. Thereafter, respondent neglected the matter and failed to communicate with Ms. Billoups. In January 2005, Ms. Billoups 1 ^discharged respondent and made a written demand for the return of the $500. Respondent failed to refund any unearned fees. Respondent also failed to respond to the complaint filed against him by Ms. Billoups with the ODC.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
 

 Count VIII
 

 Respondent worked in the New Orleans office of the law firm of Derren S. Johnson & Associates. Beginning in January 2004 and continuing through January 30, 2005, respondent directed the firm’s clients to pay legal fees directly to him, then failed to perform the requested work. He also accepted funds from clients to be forwarded to the Chapter 13 Trustee but diverted the payments to himself. Respondent further misappropriated fees held in trust to be forwarded to the Clerk of Court as filing fees. Through communication with the law firm, respondent admitted that he misappropriated $13,118 in client payments.
 

 In February 2005, the law firm filed a complaint against respondent with the ODC. Respondent failed to appear for a sworn statement despite being personally served with a subpoena.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(d), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 \gCount IX
 

 On March 16, 2005, this court placed respondent on interim suspension. Nonetheless, on March 22, 2005, respondent fax filed a second amended petition for damages in the matter entitled
 
 Ollie Doucette v. Alice Bremer and Patterson
 
 
 *1167
 

 Insurance Company,
 
 No. 495,210 on the docket of the 19th Judicial District Court, on behalf of his client, Ollie Doucette. The ODC forwarded the disciplinary complaint in this matter to respondent at multiple addresses, but he failed to respond.
 

 The ODC alleged that respondent’s conduct violated Rules 5.5 (engaging in the unauthorized practice of law), 8.1(c), 8.4(a), and 8.4(d) of the Rules of Professional Conduct.
 

 Count X
 

 In August 2004, Lucien and Bobbie Watkins hired the law firm of Derren S. Johnson & Associates to handle their Chapter IS bankruptcy. Their file was assigned to respondent, who filed a petition for bankruptcy on their behalf. Their Chapter 13 plan was confirmed. Respondent directed them to make their mortgage payments to the law firm, which they did. However, in January 2005, their mortgage company filed a motion to lift the bankruptcy stay, claiming the Watkins had failed to make their mortgage payments. When the Watkins received the motion, they attempted to contact respondent, who failed to communicate with them. The Watkins were forced to obtain new counsel to file a motion to reinstate the stay.
 

 The firm terminated respondent’s employment in late January 2005 and recovered its company vehicle from him. The firm found the Watkins’ file inside the vehicle. The file contained the Watkins’ mortgage payments for September 2004 to January 2005.
 

 |sThe ODC forwarded numerous notices of the disciplinary complaint in this matter to respondent at multiple addresses. Nonetheless, respondent failed to respond. Furthermore, the ODC was unable to personally serve respondent with a subpoena to obtain his sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6) (failure to refund an unearned fee), 1.15, 1.16(d), 8.1(c), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 Count XI
 

 In December 2003, Jan Skrzypczynski hired respondent to handle his divorce, paying him $680. Respondent did not file the petition for divorce until January 2005. In March 2005, Mr. Skrzypczynski unsuccessfully attempted to contact respondent. Respondent also failed to obtain a judgment of divorce, and Mr. Skrzypczynski was forced to obtain new counsel to complete the divorce proceeding.
 

 In April 2005, Mr. Skrzypczynski filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint, and the ODC was unable to serve him with a subpoena to obtain his sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
 

 Count XII
 

 In May 2005, after respondent was placed on interim suspension, he accepted $500 from Scott Mosbey to prepare incorporation documents for two of Mr. Mos-bey’s companies. Respondent failed to inform Mr. Mosbey that he was unable to practice law. Thereafter, Mr. Mosbey learned that respondent was suspended. He 1 flalso called the Louisiana Secretary of State’s office and learned that respondent had not filed the incorporation documents on his behalf. Mr. Mosbey requested that respondent refund the $500, but respondent failed to do so.
 

 In June 2005, Mr. Mosbey filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
 

 
 *1168
 
 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 1.16(d), 5.5, 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 Count XIII
 

 In April 2005, after respondent was placed on interim suspension, he introduced himself to Ron Bimes as an attorney-employed with the New Orleans law office of Derren S. Johnson & Associates. Soon thereafter, Mr. Bimes requested that respondent conduct legal research on his behalf. Mr. Bimes paid respondent a fee but later learned that respondent was in-terimly suspended. Mr. Bimes requested a refund of the fee, but respondent failed to provide the refund.
 

 In June 2005, the ODC became aware of respondent’s actions and initiated an investigation. However, respondent failed to cooperate with the ODC in the investigation, and the ODC was unable to serve respondent with a subpoena to obtain his sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 5.5, 8.1(c), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
 

 Count XIV
 

 In 2004, Randy Wells hired respondent to handle his divorce and community property settlement, paying him $1,100. Respondent informed Mr. Wells that he filed | mthe petition for divorce and obtained the judgment of divorce. Mr. Wells obtained a copy of the judgment of divorce from respondent. Later, Mr. Wells learned from the Family Court of East Baton Rouge Parish that the judge’s signature on the judgment of divorce was a forgery. The judgment was not signed by any of the judges elected to the family court, and there was no record of a signed judgment in the ease.
 

 In July 2005, one of the judges of the Family Court of East Baton Rouge Parish filed a complaint against respondent with the ODC. Respondent failed to respond, and the ODC was unable to serve him with a subpoena to obtain his sworn statement.
 

 The ODC alleged that respondent’s conduct violated Rules 1.4, 1.5, 4.1 (truthfulness in statements to others), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 Formal Charges
 

 In November 2006, the ODC filed fourteen counts of formal charges against respondent as set forth above. Respondent was served with the formal charges via certified mail. However, he failed to answer, and accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee’s consideration.
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission, the hearing committee submitted the following written report:
 

 | nThe captioned matter was submitted to this hearing committee for review, discussion, and report. By conference call on Thursday, November 8, 2007, the committee discussed the substance of the documentation provided by the Disciplinary Counsel concerning Mr. Engo-lio. After review of the materials included and discussion among committee members, it was unanimously concluded that the motions and recommendations of the Disciplinary Counsel be adopted by this committee. The committee is in complete agreement with regard to the findings and the recommended discipline
 
 *1169
 
 and sanctions as suggested by Disciplinary Counsel.[
 
 1
 
 ] The committee chair has been authorized to sign this report on behalf of each committee member.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 07-DB-079
 

 Counts I & II
 

 In May 2003, Gregory Brisco hired respondent to handle a personal injury matter. Respondent informed Mr. Brisco that he had filed legal documents on his behalf when, in fact, he had not. Respondent did not file the petition for damages on behalf of Mr. Brisco until May 2004. Thereafter, Mr. Brisco tried to contact respondent via telephone, but respondent would not return his calls. When Mr. Brisco arrived at respondent’s office for scheduled appointments, he was told respondent was not there. In December 2004, respondent informed Mr. Brisco that his personal injury matter had settled and that he should expect a settlement check in two weeks. However, when respondent received the $6,000 settlement check, he failed to remit to Mr. Brisco his portion of the funds. Instead, he negotiated the check 112with Mr. Brisco’s forged endorsement on it and converted the entire $6,000 to his own use. Consequently, the Louisiana State Bar Association’s Client Assistance Fund reimbursed Mr. Brisco $4,000 to replace the funds respondent converted.
 

 In May 2005, Mr. Brisco filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
 

 The ODC alleged that respondent’s conduct violated Rules 1.1 (failure to provide competent representation to a client), 1.3, 1.4, 1.5(a)(4) (failure to timely return an unearned/unreasonable fee), 1.15(a) (failure to hold client’s property separate from lawyer’s property), 1.15(d) (failure to notify client upon receipt of client funds), 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 4.1, 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 Formal Charges
 

 In November 2007, the ODC filed two counts of formal charges against respondent as set forth above. Respondent failed to answer the formal charges, and accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee’s consideration.
 

 11^Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission, the hearing committee determined that the salient facts are
 
 *1170
 
 deemed admitted. The committee made the following factual findings:
 

 Respondent represented Mr. Brisco in a claim for injuries arising from an automobile accident. Respondent failed to provide information about the personal injury lawsuit, and when he did communicate with Mr. Brisco, he misrepresented the status of the lawsuit. In December 2004, respondent advised Mr. Brisco that the lawsuit had been settled and that Mr. Bris-co could expect to receive settlement proceeds within two weeks. The defendants in the suit issued a check in the amount of $6,000 payable to Mr. Brisco and respondent. Respondent forged Mr. Brisco’s endorsement on the check and cashed it on or about December 12, 2004, converting the entire amount to his own use. The Louisiana State Bar Association’s Client Assistance Fund eventually paid Mr. Bris-co $4,000 as a result of the conversion. Respondent also failed to have the documents to dismiss Mr. Brisco’s lawsuit properly executed. The defendants were required to file a motion to enforce the settlement or to dismiss the lawsuit. A hearing on the motion was held on December 12, 2005, but respondent failed to appear. Mr. Brisco represented himself, revealing that he had never received any portion of the settlement funds. Because the defendants proved that the settlement funds were paid, the lawsuit was dismissed. Respondent was served with the resulting disciplinary complaint by mail, but he failed to respond.
 

 Based on these findings, the committee determined that respondent violated Rules 1.3, 1.4(a)(1) (promptly inform the client of any decision or circumstance with respect to which the client’s informed consent is required), 1.4(a)(2)(S)(4), 1.5(a)(4), ]_^1.5⅛)(8) (collecting an unreasonable fee), 1.15(a)(d), 3.2, 3.4(c), 4.1, 8.1(a)(b)(c), and 8.4(a)(b)(c)(d) of the Rules of Professional Conduct.
 
 [2]
 
 The committee also determined that respondent intentionally and knowingly violated duties owed to his client, the legal system, and the legal profession.
 

 The committee found the aggravating factors of dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. The committee found no mitigating factors. Based on the ABA’s
 
 Standards for Imposing Lamjer Sanctions,
 
 the committee determined that the baseline sanction is disbarment.
 

 Accordingly, the committee recommended that respondent be disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 06-DB-071 & 07-DB-079
 

 Disciplinary Board Recommendation
 

 After reviewing these consolidated matters, the disciplinary made the following findings:
 

 In 06-DB-071, the board noted that the committee made no specific factual findings. Given that the matter was deemed admitted, the board adopted the factual allegations of the formal charges, with minor corrections to the dates of sworn statements and dates and locations of receipt of the initial complaints by respondent, as the factual findings in this matter. Based upon the factual findings and the | ^evidence submitted in support thereof,
 
 *1171
 
 the board found that respondent violated the Rules of Professional Conduct as charged.
 

 In 07-DB-079, the board determined that the hearing committee’s factual findings are not manifestly erroneous. The board agreed with the rule violations found by the committee but determined that the committee erred in failing to find a violation of Rule 1.1.
 

 Based on the above findings, the board determined that respondent intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. The board also determined that the amount of actual injury is great in that numerous clients lost their legal fees or bankruptcy fees or had their cases delayed, deemed abandoned, or dismissed. Furthermore, respondent converted the entire amount of Mr. Brisco’s settlement. Ms. Derren Johnson, respondent’s former employer, also discovered that he embezzled or converted more than $13,000 from her office and/or the firm’s clients, and she made restitution to the affected clients. Respondent has failed to make restitution to her. Respondent also harmed the disciplinary system when he failed to answer complaints or appear for sworn statements.
 

 In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, indifference to making restitution, and illegal conduct. The sole mitigating factor found by the board is the absence of a prior disciplinary record.
 

 Turning to the issue of an appropriate sanction, the board cited Guideline 1 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix Jj^E, which states that permanent disbarment may be warranted when a lawyer engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” The board noted that respondent “converted client funds which were designated as client settlement funds, Chapter 13 bankruptcy plan payments, as well as unearned fees which were owed to numerous clients.” Additionally, the board cited Guideline 8 of the permanent disbarment guidelines, which calls for permanent disbarment when a lawyer, following notice, engages in the unauthorized practice of law while suspended from the practice of law. The board noted that respondent engaged in the unauthorized practice of law after he was placed on interim suspension.
 

 Accordingly, the board recommended that respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992).
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. LjHowever, the language of § 11(E)(3)
 
 *1172
 
 does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 In this consolidated and deemed admitted matter, the record reflects that respondent neglected numerous legal matters and failed to communicate with numerous clients. In addition, he failed to refund unearned fees and return client files upon termination of the representation, converted client funds to his own use, engaged in the unauthorized practice of law, and failed to cooperate with the ODC in its many investigations. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis, 513
 
 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington, 459
 
 So.2d 520 (La.1984).
 

 Respondent acted knowingly and intentionally and violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct caused significant harm to his clients, many of whom were vulnerable victims seeking ^bankruptcy protection. He also harmed the legal system, the disciplinary system, and his former employer, Derren S. Johnson
 
 &
 
 Associates, who made restitution to many of the affected clients. The baseline sanction for this type of intentional misconduct is disbarment. Considering the numerous aggravating factors in this case, we see nothing which would cause us to deviate from that baseline sanction.
 

 Having found respondent should be disbarred, the sole remaining issue for our consideration is whether respondent’s misconduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the type of conduct which we believe might warrant permanent disbarment.
 
 See In re: Yaeger,
 
 05-0035 (La.3/18/05), 897 So.2d 571.
 

 For purposes of the instant case, Guidelines 1 and 8 are relevant. Those guidelines detail the following conduct:
 

 GUIDELINE 1. Repeated or multiple instances of intentional conversion of client funds with substantial harm.
 

 GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
 

 Guideline 1 is clearly implicated, as the record demonstrates respondent engaged in multiple instances of intentional conversion of client funds, causing substantial harm both to his clients and his former law firm. Furthermore, Guideline 8 is applicable, as respondent attempted to engage in
 
 *1173
 
 the practice of law in blatant disregard of our order placing him on interim suspension.
 

 1 ^Considering these guidelines, together with the indisputable evidence of respondent’s fundamental lack of moral character and fitness, we can conceive of no circumstance under which we would readmit respondent to the practice of law.
 
 See In re: Jefferson,
 
 04-0239 (La.6/18/04), 878 So.2d 503. Accordingly, we will accept the disciplinary board’s recommendation and permanently disbar respondent.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Andrew Charles Engolio, Louisiana Bar Roll number 22773, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from seeking readmission to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . In its deemed admitted submission on sanctions, the ODC argued that respondent acted intentionally, knowingly, and negligently in violating duties owed to his clients, the public, the legal system, the legal profession, and the disciplinary system. The ODC also argued that respondent caused "serious, substantial and egregious harm” to his clients, the public, the legal profession, and the legal system. For this misconduct, the ODC submitted that respondent should be permanently disbarred.
 

 [2]
 

 . The formal charges did not allege that respondent violated Rules 1.4(a)(1) and 1.5(a)(8).