513 So.2d 1173 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
C. Scott REIS.
No. 86-B-1788.
Supreme Court of Louisiana.
October 19, 1987.
*1174 Thomas O. Collins, Jr., Ann LaCour Neeb, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, for applicant.
C. Scott Reis, Lawrence D. Wiedemann, New Orleans, for respondent.
WATSON, Justice.
This is a disciplinary proceeding brought by the Louisiana State Bar Association against one of its members, C. Scott Reis, who is charged with three specifications of misconduct.
Specification number one involves possession of cocaine in violation of LSA-R.S. 40:967(C) and Disciplinary Rules 1-102(A)(1); 1-102(A)(3); and 1-102(A)(6).[1] Specification number two charges Reis with commingling of client Woodrin's settlement funds in violation of Disciplinary Rule 1-102(A) and Rule 9-102(A)(1) and (2).[2] Specification number three asserts *1175 that respondent entered into a business transaction with client Forbes by borrowing $100,000 in an unsecured loan. Since the client relied on respondent's professional judgment, was not advised to seek independent legal advice, and the loan entailed greater risk than that in the prevailing market because of inadequate security, Reis allegedly violated Disciplinary Rule 1-102(A) and Rule 5-104(A).[3] In addition, Reis is accused of failing to timely repay the funds, thereby violating Disciplinary Rule 9-102(B).[4]
Specification One: Possession of Cocaine
On April 22, 1983, Reis was charged with a criminal offense involving possession of cocaine.[5]
Although Reis and his attorney believed that there was no probable cause for the automobile stop which resulted in the arrest, they did not file a motion to suppress. On December 20, 1983, Reis entered a conditional plea under LSA-R.S. 40:983.[6] On April 2, 1985, the probation mandated by the statute was terminated by the trial court. Disciplinary action against Reis was not initiated until after his probationary term was completed.
Reis argues that his plea resulted from the trial court's assurance that this would save his livelihood: i.e., preserve him from disciplinary action. Because it did not amount to an adjudication of guilt, the trial court believed that disciplinary action would not result from this plea.[7] The trial *1176 court correctly interpreted the statute, which allows certain first offenders to avoid the stigma of a conviction after fulfilling their terms and conditions of probation. See State v. Rabbas, 278 So.2d 45 (La.,1973).
In disciplinary proceedings based upon criminal conduct, it is the fact of conviction, not respondent's guilt, which is at issue. In a disciplinary case based on conviction of a serious crime, the question of guilt or innocence is not retried. Louisiana State Bar Association v. Vesich, 476 So.2d 811 (La.,1985); Louisiana State Bar Association v. Frank, 472 So.2d 1 (La.,1985); Louisiana State Bar Association v. Porobil, 444 So.2d 613 (La.,1984); Louisiana State Bar Association v. Loridans, 338 So.2d 1338 (La.,1976); Louisiana State Bar Association v. Shaheen, 338 So.2d 1347 (La.,1976).
The bar association argues that Reis is guilty of illegal conduct and moral turpitude adversely reflecting on his fitness to practice law. However, under the terms of the statute, the proceedings respecting Reis were "... without court adjudication of guilt and shall not be deemed a conviction...."[8] A court order was entered discharging Reis and dismissing the proceedings against him. Under these circumstances, a dismissal of prosecution is tantamount to an acquittal.[9] It would be anomalous indeed for this court to look past the proceedings which have an obvious rehabilitative purpose and punish the lawyer even though he stands acquitted. We decline to do so.
The bar association has failed to prove specification one, that Reis is guilty of illegal conduct, moral turpitude, or conduct adversely reflecting on his fitness to practice law.[10]
Specification Two: Commingling of Client Funds
Reis settled a personal injury case for Joseph Woodrin and an agent deposited the settlement draft into an account entitled "C. Scott Reis or Jeffrey M. Reilly, Escrow Account." The client received his portion of the settlement promptly and never complained that Reis had converted or commingled his funds. Although there was no conversion, the Bar Association argues that commingling alone warrants sanctions relying on Louisiana State Bar Association v. Thalheim, 504 So.2d 822 (La.,1987). Reliance on this case is misplaced as the respondent there was found guilty of both converting and commingling clients' funds.
The Commissioner found that the bar association failed to prove by clear and convincing evidence that respondent was guilty of commingling funds because: the escrow account had sufficient funds; no checks were issued by Reis personally; respondent's agent complied with Disciplinary Rule 9-102(A)(2) by depositing the client's funds into an escrow account; and the client was paid. Respondent had the option of leaving his portion in the account. The bar committee argues that the account was used as an "operating" account but offers no evidence which contradicts the Commissioner's findings. An attorney violates Disciplinary Rule 9-102 when he fails to deposit funds wholly or partially belonging to his client in a separate trust account, or when he withdraws a client's funds from the trust account. Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.,1986). However, it is incumbent upon the bar committee to prove by clear and convincing evidence that respondent did, in fact, commit the alleged violation.
*1177 There is no evidence that Reis placed Woodrin's settlement funds into an account containing other funds of the attorney. Neither Reis nor his agent ever withdrew funds from the account to which the attorney was not entitled. The bar association has failed to prove specification two, that Reis commingled his client's funds with his own.
Specification Three: Improper Business Transaction with Client Forbes
After settling a wrongful death claim on behalf of Ms. Forbes' minor children for $225,000, Reis borrowed $100,000 from Ms. Forbes and in return gave her an unsecured, undated, promissory note payable on demand with interest at twelve percent. Reis paid a total of $11,000 interest on the note, $5,000 at the time of signing the note and another $6,000 four months later. Ms. Forbes made demand on respondent for payment of the note in April of 1984 but did not receive the funds until August 22, 1984, nearly four months later.
Since Reis failed to promptly deliver funds to Ms. Forbes upon her demand, he allegedly violated Disciplinary Rule 9-102(B)(4). Louisiana State Bar Association v. Thalheim, supra.
Respondent's explanation of the four month delay was Ms. Forbes' demonstrated lack of reliability and potential for squandering the funds of the minors. Under a Mississippi judgment, Ms. Forbes had full control of the funds and had moved to North Carolina. Reis retained local counsel in North Carolina to secure a proper representative qualified to receive the funds. The funds were then forwarded to a bank in that state.
The unsecured, undated note, payable on demand, put the funds at greater risk than that generally found in a financial institution. Under the rationale expressed in Louisiana State Bar Association v. Nader,[11] later cited with approval in Louisiana State Bar Association v. Bosworth,[12] respondent acted improperly in entering into this business transaction where he and his client, as borrower and lender, had conflicting interests.
Respondent maintains that Ms. Forbes was not satisfied with the conventional interest which certificates of deposit would provide and preferred the higher twelve percent interest he offered. In response to the allegation that the loan was unsecured, respondent argues that it was secured by the fact that his assets far exceeded the face value of the note. Respondent maintains that his financial statement never fell below $500,000 but offered no supporting evidence. Reis also testified that he had $180,000 on deposit but did not name the financial institution where this certificate of deposit was held. There is no independent evidence of security protecting the interests of the Forbes' family.
Louisiana State Bar Association v. Bosworth, supra, held that where an attorney took a loan from his client without advising the client to seek outside counsel, full disclosure was required.[13] Reis made no disclosure to Ms. Forbes other than his assurance that the money was safe. Respondent did not furnish Ms. Forbes with a financial statement and did not give collateral to secure the loan. Although Reis believed Ms. Forbes to be uneducated, he did not advise her to seek other counsel before making the loan. The evidence is clear and convincing that respondent acted in violation of the disciplinary rules as to specification three.
Disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity *1178 of the profession, and deter future misconduct. Louisiana State Bar Association v. Bosworth, supra; Louisiana State Bar Association v. Alker, 491 So.2d 1328 (La.,1986); Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La., 1985); Louisiana State Bar Association v. Kramer, 420 So.2d 1110 (La.,1982); Louisiana State Bar Association v. Miller, 382 So.2d 911 (La.,1980). The discipline to be imposed depends upon the facts of each case and the seriousness of the offense(s) involved, considered in light of any aggravating and mitigating circumstances. Bosworth, supra; Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.,1984).
Reis continued his private practice after the Forbes' matter without any difficulty and has achieved a position of public trust as executive counsel to the Louisiana Secretary of State. His client suffered no permanent loss and was ultimately paid in full with interest. An appropriate sanction is a public reprimand.[14]
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that C. Scott Reis be and he is hereby publicly reprimanded for improper business dealing with a client.
DIXON, C.J., and DENNIS, J., concur.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
As to the specification involving cocaine possession, the Bar Association proved through the testimony of a police officer that cocaine was found in respondent's car and briefcase during a 1983 search. This was clear and convincing evidence that respondent engaged in illegal conduct involving moral terpitude in violation of DR 1-102(A). However, by the time this disciplinary proceeding was filed more than three years later, respondent had successfully completed his probationary period and had apparently achieved complete rehabilitation.[1] The mitigating circumstances of respondent's first offender status, his successful rehabilitation, and his subsequent unblemished record warrant imposition only of a public reprimand for this proved misconduct.
NOTES
[1] Rule 1-102(A) of the Code of Professional Responsibility provides in pertinent part:

"(A) A lawyer shall not:
"(1) Violate a disciplinary rule.
* * * * * *
"(3) Engage in illegal conduct involving moral turpitude.
* * * * * *
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[2] Rule 9-102(A)(1) and (2) of the Code of Professional Responsibility provide:

"A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"1. Funds reasonably sufficient to pay bank charges may be deposited therein.
"2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved. * * *"
[3] Rule 5-104(A) of the Code of Professional Responsibility provides:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure. * * *
[4] Rule 9-102(B) of the Code of Professional Responsibility provides:

"B. A lawyer shall:
"1. Promptly notify a client of the receipt of his funds, securities or other properties.
"2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
"3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
"4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. * *"
[5] The record does not reflect precisely the charge but apparently it was possession of cocaine in violation of LSA-R.S. 40:967(C).
[6] LSA-R.S. 40:983 provides in pertinent part:

"Whenever any person who has not previously been convicted of any offense under this part pleads guilty to or is convicted of having violated R.S. 40:966C, 40:967C, 40:968C, 40:969C, 40:970C of this part, and when it appears that the best interests of the public and of the defendant will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required.
"Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for second or subsequent convictions under R.S. 40:982."
[7] "... It is most regrettable that the substitute court reporter who handled the entering of this plea has, as I am told, lost her notes for the time period that covers the date in question. A transcript of the proceeding would show clearly that it is my custom to have an indepth dialogue with any individual who enters a plea before me. In particular, in this case since it was an attorney entering a plea pursuant to R.S. 40:983 I assured Mr. Reis that it was my intention to provide him this chance to save his life and livelihood and not to enter a judgment of guilt on his behalf as was my option under this statute. I also went on to expressly advise him that it was my intention as is provided in this statute to discharge him and dismiss all proceedings against him upon successful completion of all the terms that I had set forth. It is my understanding that Mr. Reis has lived up to all of the conditions to date and it is my intention to go forward with the dismissal at the appropriate time." Letter from Judge Miriam G. Waltzer, Judge, Section "A", Criminal District Court, Parish of Orleans, to Executive Counsel Thomas O. Collins, Jr., Respondent's Exhibit R-7. It was stipulated that Judge Waltzer's testimony would have been in accord with this letter.
[8] LSA-R.S. 40:983 in pertinent part.
[9] Black's Law Dictionary's definition of "acquittal" includes:

"... [O]ne legally acquitted by a judgment rendered otherwise than in pursuance of a verdict, as where he is discharged by a magistrate because of the insufficiency of the evidence, or the indictment is dismissed by the court or a nol.pros. entered...."
[10] Disturbing but not decisive is the long lapse of time between the alleged violation and this matter being presented to the court. Steps are now being taken by the bar association and the court to avoid unnecessary delays in the future.
[11] 472 So.2d 11 (La.,1985).
[12] 481 So.2d 567 (La.,1986).
[13] "* * * When a lawyer enters into a business transaction with his client where they have differing interests and when the client expects the lawyer to exercise his professional judgment in that transaction for the protection of the client, the lawyer should at least advise the client to seek outside counsel. If the advice to seek outside counsel has not been given, ... then full disclosure would require the type of advice which a prudent lawyer would be expected to give the client if the client consulted the lawyer regarding such a transaction to a third person. See In re Conduct of Montgomery, 292 Or. 796, 643 P.2d 338 (1982). * * *" State v. Bosworth, supra, 481 So.2d 567 at 572.
[14] As to this charge, the Commissioner, who heard the evidence, recommended a public reprimand.
[1] The delay in instituting disciplinary proceedings actually inured to respondent's benefit by giving him time to establish substantial mitigating circumstances.