*761
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 | iThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael Wayne McClanahan, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in October 1997.
 
 In re: McClanahan,
 
 97-2555 (La.11/5/97), 701 So.2d 959. The interim suspension followed respondent’s acknowledgment to the ODC that he was addicted to drugs and alcohol. Thereafter, respondent entered substance abuse treatment for his addiction and achieved sobriety.
 

 UNDERLYING FACTS
 

 99-DB-088
 

 Count I
 
 — The
 
 Gros Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Respondent was employed as an associate with the Law Offices of Marvin Gros. As an associate, respondent was authorized to issue checks from the office operating account, including issuing checks to himself to pay his salary and commission. In April 1995, respondent issued a $5,000 check to himself for 12“commission reimbursement.” However, the check was
 
 *762
 
 inadvertently drawn on the firm’s client trust account.
 

 The following additional facts were alleged in the formal charges and have not been stipulated to by respondent:
 

 Respondent instructed a non-lawyer assistant to obtain the check from the checkbook and to go to the bank for him.
 
 [1]
 
 On September 14, 1995, the drawee bank reimbursed the funds to the account as a fraud loss. Respondent failed to repay the funds.
 

 In the formal charges, the ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct, as those rules were in effect at the time of the misconduct: Rules 1.15(a) (safekeeping property of clients or third persons), 5.3 (failure to properly supervise a non-lawyer assistant), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent stipulated that he violated Rules 1.15(a) and 5.3.
 

 Count II
 
 — The
 
 Elzy/Rome Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 In June 1995, respondent’s employment with Mr. Gros ended. Respondent took the files of Wendell Elzy, Jocelyn Rome, and Tameka Rome without Mr. Gros’ knowledge or consent, later informing Mr. Gros that these clients no longer desired Mr. Gros’ services. During his representation of these clients, respondent provided them with unexplained cash advances. In December 1995, he settled the three cases |3but did not disburse the funds withheld for the clients’ medical providers until February 18, 1997. During the ODC’s investigation of this matter, respondent failed to provide the ODC with a supplemental response.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.2(a) (scope of the representation), 1.4 (failure to communicate with a client), 1.8(e) (a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation), 1.15(a), 1.15(b) (failure to timely remit funds to a client or third person), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.4, 1.8(e), 1.15(a), 1.15(b), and 8.1(c).
 

 Count III
 
 — The
 
 Perniciaro Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 After leaving his employment with Mr. Gros, respondent established an agreement with Dr. Jay Perniciaro concerning payments for medical treatment of respondent’s personal injury clients. As of July 1996, Dr. Perniciaro’s bills for services rendered to nine of respondent’s clients totaled $14,336. Respondent settled the clients’ cases and withheld funds to pay Dr. Perniciaro. However, he did not promptly disburse Dr. Perniciaro’s funds. Respondent informed Dr. Pernicia-ro that his employee had stolen funds on deposit for payment of client expenses. During the ODC’s investigation of this matter, respondent failed to appear on March 26, 1997 to provide the ODC with subpoenaed financial records.
 

 
 *763
 
 Lin the formal charges, the ODC alleged that respondent violated Rules 1.15(b), 5.3, 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(g) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.15(b), 5.3, 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(c), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Count IV
 
 — The
 
 Jones Mutter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Respondent represented George Jones in a personal injury matter. On June 30,1995, he issued a letter of guarantee to Uptown Physical Medicine and Rehabilitation, Mr. Jones’ medical provider. Thereafter, respondent settled Mr. Jones’ case and withheld funds from the settlement to pay Uptown’s bill. However, he failed to disburse the funds to Uptown. During the ODC’s investigation of this matter, respondent failed to provide the ODC with subpoenaed financial records and settlement documents.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.15(a), 1.15(b), 1.15(c) (when a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests), 1.16(d), 8.1(c), 8.4(a), 8.4(c), and 8.4(g) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.15(a), 1.15(b), 1.15(c), 3.4(c), 8.1(c), 8.4(a), and 8.4(d).
 

 Count V
 
 — The
 
 Diggs Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 In October 1996, respondent set-tied a personal injury claim on behalf of Bernice Diggs. The settlement agreement required Ms. Diggs to execute release and Ldismissal documents prior to respondent disbursing the funds. Nonetheless, respondent disbursed the funds without filing a judgment of dismissal in Ms. Diggs’ case. During the ODC’s investigation of this matter, respondent failed to respond to the initial complaint.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(c), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.3, 3.2, 3.4(c), 8.1(e), 8.4(a), and 8.4(d).
 

 Count VI
 
 — The
 
 Oxner/Craig Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 In 1994, respondent served as Tamela Oxner’s indigent defense counsel in a criminal matter. On April 2, 1997, Shirley Craig hired respondent to represent Ms. Oxner in the same criminal matter.
 
 [2]
 
 Ms. Craig paid respondent $650 toward his $2,500 fee. However, when respondent appeared in court, he did not inform Ms. Oxner or the court that he was acting as Ms. Oxner’s retained counsel instead of her indigent defense counsel. During the ODC’s investigation of this matter, respondent failed to respond to the initial complaint.
 

 The following additional facts were alleged in the formal charges and have not been stipulated to by respondent:
 

 
 *764
 
 16Respondent failed to appear in court for Ms. Oxner’s trial on April 21, 1997 and failed to return Ms. Craig’s numerous telephone calls. He also failed to account for or refund the unearned portion of the fee paid by Ms. Craig.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.4,1.16(d), 3.4(c), 8.1(c), 8.4(a), and 8.4(d).
 

 Count VII—The Bracken Matter
 

 In October 1995, Leonard Bracken hired respondent to handle his personal injury claim. In March 1996, after rejecting two settlement offers, Mr. Bracken informed respondent that he wanted to file a lawsuit in the matter. For approximately a year thereafter, Mr. Bracken received no communication from respondent. As such, in March 1997, he terminated respondent’s services and requested his file. Nonetheless, on April 11,1997, respondent informed Mr. Bracken that he settled his claim and was in possession of the settlement check. Respondent settled the claim without Mr. Bracken’s knowledge or consent, failed to return Mr. Bracken’s file, and failed to account for the funds he received on Mr. Bracken’s behalf.
 
 [3]
 
 During the ODC’s investigation of this matter, respondent failed to respond to the initial complaint.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.2(a), 1.3, 1.4, 1.16(a) (a lawyer shall withdraw from the representation of a client if the |7lawyer is discharged), 1.16(d), 3.2, 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
 

 Count VIII—The Williams Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 In July 1995, Mary Williams hired respondent to handle her bankruptcy. Ms. Williams paid respondent $400 in fees and $175 for court costs.
 
 [4]
 
 Respondent neglected the matter and failed to communicate with Ms. Williams.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.3, 1.4, 1.16(d), 3.2, 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(a).
 

 Count IX—The Gillard/Wright Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Gwendolyn Gillard, Bridgette Wright, and Tiffany Wright hired respondent to represent them in personal injury matters. In March 1997, respondent settled their claims without their knowledge or consent. He then negotiated the settlement checks and retained the proceeds for his own use and benefit.
 
 [5]
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.2(a), 1.4, 1.15(b), 1.16(d), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.2, 1.4, 1.15(b), 1.16(d), 8.4(a), and 8.4(c).
 

 
 *765
 
 laCcnmis
 
 X & XI—The Welch Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Respondent represented Glen Welch in a criminal matter. On August 14, 1997, respondent failed to appear in court for Mr. Welch’s trial. Consequently, the judge issued a bench warrant for respondent’s arrest, and Mr. Welch’s trial was suspended. Respondent returned to court the next day, and the judge recalled the bench warrant. The judge sentenced respondent to serve twenty-four hours in the parish prison for contempt of court and ordered him to submit to a drug test, which he failed.
 

 The following additional facts were alleged in the formal charges and have not been stipulated to by respondent:
 

 In November 1996, Mr. Welch hired respondent to represent him in the above criminal matter. Mr. Welch paid respondent $850 toward his $6,000 fee, of which $500 was non-refundable. Respondent failed to appeal1 in court because of his drug abuse. The court declared a mistrial in Mr. Welch’s case.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.1(a) (failure to provide competent representation to a client), 1.3, 1.4, 1.7(b) (a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person or by the lawyer’s own interests), 1.16(a)(2) (a lawyer shall withdraw from the representation of a client if the lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client), 3.2, 3.4(c), 3.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal), 8.3(a) (reporting professional misconduct), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.1(a), 1.3, 1.7(b), 3.2, 3.4(c), 3.5(c), 8.3(a), 8.4(a), 8.4(c), and 8.4(d).
 

 |
 
 oPount XII—The Collins/Howard Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 On July 29, 1995, Carol Collins and Carrisa Howard hired respondent to handle their personal injury claims. Thereafter, respondent failed to keep them fully informed of the status of their cases. Although he settled part of their property damage claims, he did not complete the representation.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.2(a), 1.3, 1.4, 1.16(d), and 8.4(a) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.2, 1.3, 1.4, and 8.4(a).
 

 Count XIII—The Hathorn Matter
 

 During respondent’s employment with Mr. Gros, he represented Gracie Mae Hathorn in various matters. On August 2, 1995, after respondent’s employment with Mr. Gros ended, he informed Ms. Hathorn that he retained her file to continue the representations. Thereafter, respondent failed to complete the representations and failed to communicate with Ms. Hathorn.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(a) of the Rules of Professional Conduct.
 

 Count XIV—The Guarisco Matter
 

 While employed with Mr. Gros, respondent represented Brian Kelly in a personal injury matter. On January 5, 1994, respondent issued a letter of guarantee to Dr. Charles Guarisco for the payment of Mr. Kelly’s medical bills. In May 1995, respondent settled Mr. Kelly’s case for $6,958. On July 3, 1995, Dr. Guarisco agreed to reduce his bill, and respondent
 
 *766
 
 indicated that he would forward $3,000 to pay the |lflreduced bill within one week. Respondent’s employment with Mr. Gros ended on July 21, 1995, and respondent retained Mr. Kelly’s file to continue the representation. Nonetheless, respondent failed to pay Dr. Guarisco’s bill from the settlement proceeds.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.15(a), 1.15(b), 1.15(c), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.
 

 Count XV
 
 — The
 
 Myles Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Beginning in February 1997, Danielle Myles hired respondent to represent her in three separate personal injury matters. Without Ms. Myles’ knowledge or consent, respondent settled the claims, negotiated the settlement checks, and retained the proceeds for his own use and benefit.
 
 [6]
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.1(a), 1.3, 1.4, 1.7(b), 1.15(a), 1.15(b), 1.16(a), 1.16(d), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. Respondent stipulated that he violated Rules 1.1(a), 1.3, 1.4, 1.7(b), 1.15(a), 1.15(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
 

 Count XVI
 
 — The
 
 Valery Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Respondent represented Ronald Valery in a misdemeanor criminal matter. On the day of Mr. Valery’s trial, respondent did not make an appearance until after court adjourned for the day. Meanwhile, the judge issued a bench warrant for respondent’s |narrest for his failure to appear. On August 15, 1997, the judge sentenced respondent to serve twenty-four hours in the parish prison for contempt of court.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.1(a), 3.2, 3.4(c), 3.5(c), 8.4(a) and 8.4(d) of the Rules of Professional Conduct. Respondent stipulated that he violated the above rules as alleged.
 

 Count XVII
 
 — The
 
 Fonseca Matter
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 Respondent represented Tina Fonseca in a criminal appeal. In accordance with the rules of the court of appeal, respondent was obligated to file a brief on Ms. Fonseca’s behalf. Respondent requested an extension of time to file the brief but, thereafter, failed to do so.
 

 In the formal charges, the ODC alleged that respondent violated Rules 1.1(a), 1.3, 3.2, 3.4(c), 3.5(c), 8.4(a) and 8.4(d) of the Rules of Professional Conduct. Respondent stipulated that he violated the above rules as alleged.
 

 08-DB-076
 

 Respondent’s Criminal Conviction
 

 The following facts are not in dispute, having been stipulated to by the parties:
 

 In July 1997, a warrant was issued for respondent’s arrest arising from his misconduct in the Gillard/Wright matter (Count IX of 99-DB-088). In May 1998, respondent pled guilty to four counts of felony theft. In September 1998, respondent 112was sentenced to serve a total of four years in prison, with credit for time
 
 *767
 
 served.
 
 [7]
 
 Respondent was released from custody in September 2000.
 

 In the formal charges, the ODC alleged that respondent violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct. Respondent stipulated that he violated the above rules as alleged,
 

 DISCIPLINARY PROCEEDINGS
 

 In September 1999, the ODC filed the formal charges in 99-DB-088. In September 2008, the ODC filed the formal charges in 08-DB-076. Respondent answered both sets of formal charges, which were then consolidated by order of the hearing committee chair.
 

 Hearing Committee RepoH
 

 The consolidated matters proceeded to a formal hearing on the merits. After considering the evidence and testimony presented at the hearing, the hearing committee accepted the parties’ stipulation of facts.
 
 [8]
 
 The committee also noted that the stipulation enumerated respondent’s violations of the Rules of Professional Conduct. As such, the committee decided it “will not further analyze the violations as they have been deemed admitted pursuant to the stipulation.”
 

 The committee determined that respondent intentionally violated duties owed to his clients’ the leSal system> the disciplinary system, and the public. The committee also found that respondent “caused real harm to real PeoPle while ^contemporaneously disgracing our besieged [legal] profession.” After reviewing the ABA’s
 
 Standards for Imposing Laiv-yer Sanctions,
 
 the committee determined that the baseline sanction is disbarment and “may be much closer to permanent disbarment” based on respondent’s repeated and multiple instances of intentional violations.
 
 [9]
 

 The committee found the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law (admitted 1992), and illegal conduct, including that involving the use of controlled substances. The committee found the following mitigating factors: absence of a prior disciplinary record, good faith effort to make restitution or to rectify the consequences of the misconduct,
 
 [10]
 
 a
 
 *768
 
 cooperative attitude toward the proceedings, mental disability or chemical dependency including alcoholism or drug abuse, imposition of other penalties or sanctions, and remorse.
 

 Finding the circumstances of this case to be compelling, the committee recommended a one-year suspension from the practice of law, retroactive to the date of respondent’s interim suspension. The committee further recommended that | ^respondent be placed on probation for two years beginning with the issuance of the court’s final order, subject to conditions.
 
 [11]
 

 The ODC filed an objection to the hearing committee’s report and recommendation, stating that the recommended sanction was unduly lenient.
 

 Disciplinary Board Recommendation
 

 After reviewing these consolidated matters, the disciplinary board found that the hearing committee’s factual findings of misconduct are supported by respondent’s stipulations and/or by the documentary evidence submitted in support of the allegations.
 
 [12]
 
 Therefore, the board adopted the committee’s findings of misconduct. The board noted that the admitted misconduct includes conviction of a felony for stealing client funds, numerous instances of neglect, including failure to attend his client’s criminal trial, resulting in a mistrial, trust account violations, failure to communicate, failure to return client files, misrepresentation and dishonesty, and failure to cooperate with the ODC in its investigation.
 
 [13]
 

 The board determined that respondent knowingly and intentionally violated duties owed to his clients, the legal system, the legal profession, and the public. His conduct caused serious and/or potentially serious harm to his clients, the legal system, the legal profession, and the public.
 

 1 iSThe board agreed with the aggravating and mitigating factors found by the committee. The board also agreed with the committee that the baseline sanction is permanent disbarment.
 
 [14]
 
 Although a downward deviation is appropriate given the mitigating factors, the board determined that the committee’s proposed one-year suspension is unduly lenient because respondent has not yet made complete restitution and, thus, should be required to petition for reinstatement.
 

 After further considering this court’s prior jurisprudence involving similar misconduct, the board recommended that respondent be suspended from the practice of law for three years, retroactive to the date of his interim suspension. The board also recommended that respondent be ordered to make restitution to the parties to whom restitution remains incomplete. Four board members dissented and would recommend disbarment.
 

 
 *769
 
 Although neither respondent nor the ODC filed an objection to the board’s recommendation, we directed the parties to submit briefs addressing the issue of the appropriate sanction under the facts of this ease. Both parties filed briefs in response to the court’s order.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the | |fimanifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 In this matter, respondent stipulated to numerous facts, which facts are supported by the record. The record further supports respondent’s admitted violations of the Buies of Professional Conduct as set forth in the stipulation of facts.
 

 Respondent did not stipulate to any facts or rule violations in the Bracken, Hathorn, and Guarisco matters. However, the record and respondent’s testimony at the formal hearing indicate that he violated Rules 1.2(a), 1.3, 1.4, 1.16(a), 1.16(d), 3.2, 8.1(c), 8.4(a), and 8.4(c) of the Rules of Professional Conduct in the Bracken matter and violated Rules 1.15(a), 1.15(b), 8.4(a), and 8.4(c) of the Rules of Professional Conduct in the Guarisco matter. With respect to the Hathorn matter, on August 15, 2005, respondent wrote to Ms. Hathorn, stating, “Please accept my humblest apology for my actions in handling your cases. The way in which I handled them was unprofessional and unethical ... Also, I hope to develop a repayment plan with approval from the State Bar Ass’n that will make you whole again.” Respondent’s admissions in his letter to Ms. Hat-horn, along with the alleged facts in this count, indicate that respondent violated Rules 1.3, 1.4, and 8.4(a) of the Rules of Professional Conduct.
 

 In all, respondent neglected legal matters, failed to communicate with clients, failed to account for or refund unearned fees, failed to timely remit funds to third-party medical providers, converted client funds to his own use, failed to properly supervise his non-lawyer assistants, was twice held in contempt of court, was convicted of felony theft, and failed to cooperate with the ODC in its investigations.
 

 117Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent knowingly and intentionally violated duties owed to his clients, the legal system, the legal profession, and the public. He caused actual serious harm to numerous clients and third-party medical providers, as well as to the legal system and the legal profession. The baseline
 
 *770
 
 sanction for this type of misconduct is disbarment.
 

 The record supports the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, and illegal conduct, including that involving the use of controlled substances. As mitigating factors, we recognize the absence of a prior disciplinary record, a cooperative attitude toward the proceedings, character and reputation, delay in the disciplinary proceedings, imposition of other penalties or sanctions, and remorse. Additionally, the record reveals that respondent’s drug addiction played a large role in his misconduct, and that respondent has addressed his addiction through a sustained period of successful rehabilitation.
 

 While we acknowledge the considerable mitigating circumstances in this case, we cannot ignore the sheer volume of harm visited by respondent upon his clients and third parties. The egregious facts of this case simply will not allow us to deviate | isbelow the baseline penalty of disbarment. Accordingly, we must disbar respondent retroactive to the date of his interim suspension.
 
 [15]
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Michael Wayne McCla-nahan, Louisiana Bar Roll number 21348, be and he hereby is disbarred, retroactive to November 5, 1997, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . The non-lawyer assistant informed the ODC that he inadvertently provided respondent with a check from (lie client trust account instead of the operating account.
 

 [2]
 

 . The record indicates that respondent was removed as Ms. Oxner's indigent defense counsel in 1994, and her case was subsequently delayed almost three years. When Ms. Oxner was re-arrested on the same charges in March 1997, Ms. Craig hired respondent to represent her.
 

 [3]
 

 .Respondent testified at the formal hearing that he stole Mr. Bracken's money to “support my habit.” Mr. Bracken has a $9,000 judgment against respondent and is currently garnishing his wages.
 

 [4]
 

 . Ms. Williams indicated that respondent refunded $100 without explanation.
 

 [5]
 

 . The formal charges alleged, but respondent did not stipulate, that the settlement proceeds totaled $11,957.
 

 [6]
 

 . The formal charges alleged, but respondent did not stipulate, that Ms. Myles terminated respondent's services in the three matters via letter dated August 14, 1998.
 

 Respondent testified at the formal hearing that he owes Ms. Myles approximately
 
 $10,000.
 

 [7]
 

 . During his incarceration, respondent was determined to be affected by chemical dependency and was ordered to undergo rehabilitation at the state's Blue Waters substance abuse treatment program.
 

 [8]
 

 . The committee did not make factual findings regarding the counts of misconduct that were not included in the stipulation.
 

 [9]
 

 . Insofar as the committee assessed the baseline sanction at permanent disbarment, it is incorrect. Permanent disbarment only affects the right of a disbarred lawyer to seek readmission.
 
 See In re: Laudumiey & Mann,
 
 03-0234 (La.6/27/03), 849 So.2d 515. Because the most serious sanction available under Supreme Court Rule XIX (and under the ABA Standards) is disbarment, the applicable baseline sanction in this case is disbarment.
 

 [10]
 

 .Respondent introduced documentary evidence at the hearing showing that he has paid restitution as follows: 1) $2,000 paid to Dr. Charles Guarisco on December 27, 2006; 2) $475 paid to Mary Williams on December 22, 2006; 3) $1,200 paid to Carol Collins on December 22, 2006; 4) $500 paid to Carol Collins’ mechanic on December 28, 2006; and 5) $1,000 paid to Uptown Physical Medicine and Rehabilitation on December 27, 2006. Respondent testified that he still owes restitution to Dr. Perniciaro (with whom he has worked out a repayment plan) and Mr. Bracken totaling approximately $20,000. He also still owes restitution to Ms. Myles and to Ms. Craig, whom he has been unable to contact.
 

 [11]
 

 . The committee proposed that respondent make full restitution during the probationary period; that he enroll in and abide by a LAP contract; and that he secure the assistance of a mentoring attorney for two years.
 

 [12]
 

 . The board made one correction, stating that respondent’s stipulation does not admit a Rule 8.3(a) violation, and there is no evidence or argument presented by the ODC in support of this allegation. Accordingly, the board dismissed the Rule 8.3(a) charge as abandoned by the ODC. However, a review of the stipulation reveals that, in the Welch matter, respondent did, in fact, admit to a violation of Rule 8.3(a).
 

 [13]
 

 . Like the committee, the board did not make factual findings regarding the counts of misconduct that were not included in the stipulation.
 

 [14]
 

 . As discussed in connection with the hearing committee's report, the baseline sanction is correctly said to be disbarment. See note 9,
 
 supra.
 

 [15]
 

 . We recognize that from respondent’s point of view, the practical distinction between a three-year suspension and disbarment is somewhat academic under the facts of this case. Because respondent has been on interim suspension for over ten years, he would be immediately eligible to seek reinstatement/readmission in either event. Nonetheless, such considerations do not impact our decision, which is based on the facts of the case and prior jurisprudence.