55 So.3d 758 (2011)
In re Jerome W. DIXON.
No. 2010-B-1950.
Supreme Court of Louisiana.
January 19, 2011.
*759 Charles Bennett Plattsmier, G. Fred Ours, Baton Rouge, LA, for Applicant.
Clary & Overton, LLP, James Ronald Clary, Jr., Jerome Wayne Dixon, for Respondent.
*760 PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Jerome W. Dixon, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Dixon, 09-0734 (La.5/29/09), 10 So.3d 1222.

PRIOR DISCIPLINARY HISTORY AND SUBSTANCE ABUSE HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history and substance abuse history.
Respondent was admitted to the practice of law in Louisiana in 1988. In 1995, respondent was publicly reprimanded and ordered to complete fifteen hours of continuing legal education in the area of law office management for conduct involving incompetence, neglect, and failure to cooperate with the ODC in its investigations. Also in 1995, respondent began a recovery program for alcoholism and drug abuse.
In 1999, the court accepted a petition for consent discipline transferring respondent to disability inactive status, deferred, subject to two years of probation with supervision by the Lawyers Assistance Program ("LAP"). Respondent's misconduct involved issuing numerous bad checks from his office account and client trust account between 1993 and 1995, which misconduct was the direct result of alcoholism and drug abuse. In re: Dixon, 99-1743 (La.10/1/99), 744 So.2d 618.
In August 2005, respondent relapsed after ten years of sobriety. He entered a detox facility in January 2006 but again relapsed soon thereafter. From February 2006 until September 2006, respondent sought treatment at the O'Brien House, a halfway house for recovering alcoholics and drug addicts. In 2007, respondent relapsed twice, and on November 1, 2007, he entered the Louisiana Health & Rehabilitation Options Social Detox facility in Baton Rouge.[1] On November 6, 2007, following detox, he returned to the O'Brien House and completed a six-month treatment program. On December 17, 2007, respondent signed a five-year LAP contract.
In 2008, the court suspended respondent from the practice of law for one year and one day, with all but six months deferred, followed by one year of unsupervised probation, for neglecting a legal matter, altering a public record, and making false statements to the ODC, all of which occurred between January 2003 and February 2005. In re: Dixon, 08-1618 (La.12/2/08), 996 So.2d 1029.
In March 2009, the ODC filed a petition to place respondent on interim suspension at the expiration of his six-month suspension issued in December 2008. The petition for interim suspension was based on the same misconduct that forms the basis of the formal charges in the instant matter. On May 29, 2009, the court ordered that respondent be suspended from the practice of law on an interim basis to take effect at the expiration of his suspension. In re: Dixon, 09-0734 (La.5/29/09), 10 So.3d 1222. Respondent's interim suspension took effect on June 17, 2009.

UNDERLYING FACTS

Count IThe Trust Account Matter
Between December 1, 2006 and May 30, 2008, respondent maintained two client *761 trust accounts, one at Chase Bank and one at Liberty Bank. The ODC's auditor, Ronald White, audited the accounts. Mr. White's November 2008 audit report indicated there were more than 200 unexplained entries in the accounts because respondent failed to keep complete records of the accounts. The report also indicated there were multiple instances of commingling of respondent's funds with client funds and multiple instances of conversion of client and/or third-party funds.
With respect to the commingled funds, the audit report indicated respondent left approximately $91,000 of his fees in the trust accounts. Mr. White also indicated respondent paid personal and/or office expenses from the trust accounts.
With respect to the converted funds, Mr. White's report indicated the following: 1) approximately $890 was paid to clients or third-party medical providers from the wrong trust account (the settlement funds were deposited in the other trust account); 2) approximately $2,185 was not paid to third-party medical providers; 3) approximately $4,100 was not paid to clients; 4) a $7,300 settlement check was not deposited in either trust account; and 5) a $4,667 settlement check was deposited into one of the trust accounts on October 19, 2007, but the account did not have sufficient funds to pay the client until November 18, 2007. The report also indicated that, on several occasions, the trust accounts had negative balances. Mr. White further indicated that, in many cases, he found no supporting documentation to prove the amounts on settlement disbursement statements were actually disbursed.
Respondent's accountant, Brian Blackwell, conducted his own audit and provided a response to Mr. White's audit report in May 2009. In his response, Mr. Blackwell determined all clients and third parties were paid in full after he analyzed respondent's trust account records, interviewed respondent, and called clerk of court offices and third-party medical providers. Mr. Blackwell also indicated that respondent took his fees from the trust accounts "in partial payments or increments over time."[2] Mr. Blackwell agreed that respondent's trust account records were disorganized, stating he encountered "a document problem, a support problem, a bookkeeping problem, the ability to accurately determine, you know, how [respondent] took his fees."
The ODC alleged respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.15(a)-(e) (safekeeping property of clients or third persons), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count IIRespondent's Criminal Conviction
In February 2008, during respondent's six-month substance abuse treatment program at the O'Brien House, he paid a woman $20 to have sexual intercourse with him. A police officer interrupted the sexual act, and both respondent and the woman admitted that respondent had paid $20 in exchange for sexual intercourse. Respondent subsequently received a misdemeanor summons for prostitution. In his pre-argument brief to this court, respondent indicated he pled no contest to the charge, which was subsequently dismissed pursuant to La. C. Cr. P. art. 894.
*762 The ODC alleged respondent violated Rule 8.4(b) of the Rules of Professional Conduct.

Count IIIThe Woods Matter
In October 2005, Reva Woods paid respondent $500 to handle her bankruptcy matter. Respondent failed to appear in bankruptcy court to represent Ms. Woods at a creditors' meeting in February 2006, and a show cause order was issued against him. In the meantime, the creditors' meeting was rescheduled in March 2006. Again, respondent failed to appear, but he did arrange for attorney Hansel Harlan to represent Ms. Woods at the creditors' meeting.[3] In June 2006, the bankruptcy court ordered respondent to refund $100 of the $500 fee to Ms. Woods because of his failure to represent her at the creditors' meeting. Respondent failed to comply with the court's refund order until February 2009, when he sent Ms. Woods a $100 money order.[4]
The ODC alleged respondent violated Rules 1.5(f)(5) (failure to refund an unearned fee), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS
In March 2009, the ODC filed formal charges against respondent. Respondent answered the formal charges, admitting some misconduct while denying other misconduct. The matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee in October 2009.

Hearing Committee Report
After reviewing the testimony and evidence presented at the hearing, the hearing committee found the following:
The Trust Account matterThe committee found that according to Mr. White's audit, there were substantial improper transactions in respondent's trust accounts, including multiple instances of commingling and conversion of client and/or third-party funds. Although respondent testified at the hearing that he had inadequate knowledge of how to maintain his trust accounts, the committee found this testimony was not credible because, in 1994, respondent was publicly reprimanded and ordered to complete additional hours of continuing legal education in the area of law office management. Respondent stipulated that he failed to maintain and preserve the trust accounts and financial records as required by Rule 1.15(a), and his conduct was knowing. Respondent has a prior disciplinary offense from 1999 stemming from his failure to maintain the required separation of funds and his use of trust account funds to pay personal expenses. Respondent testified that he deposited his own funds into the trust account to make up for missing funds in violation of Rule 1.15(b). Respondent's testimony and/or Mr. White's audit report established violations of Rules 1.15(c), 1.15(d), and 1.15(e). Such conversion of client funds constitutes either theft or unauthorized use of a movable, both of which *763 are criminal offenses in violation of Rule 8.4(b). Conversion also constitutes conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c). Respondent also violated Rule 1.3 by failing to accurately account for and disburse client funds.
Respondent's criminal convictionThe committee made factual findings consistent with the underlying facts set forth above. Accordingly, the committee found respondent violated Rule 8.4(b). The committee also found respondent acted intentionally.
The Woods matterThe committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee found that Ms. Woods was not paid until after she filed a disciplinary complaint and some ten months after the ODC notified respondent of the complaint. Respondent's excuse was that he "thought" he had paid her but had no receipt. The committee found this explanation not credible and determined respondent "deliberately delayed (perhaps stubbornly), as long as possible, the refund of this money." There was a judicially-determined unearned portion of the fee respondent was ordered to refund. His failure to promptly refund this unearned portion after being ordered to do so is a violation of Rules 1.5(f)(5), 3.4(c), 8.4(c), and 8.4(d).
The committee further determined respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal system. After considering the ABA's Standards for Imposing Lawyer Sanctions, the committee determined permanent disbarment is the baseline sanction.[5]
In aggravation, the committee found the following factors: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victim, substantial experience in the practice of law (admitted 1988), and illegal conduct. The committee did not find any mitigating factors present, noting its belief that "Respondent's chance of relapse at this stage is fairly high and does not justify any further risk to the public." The committee also stated that the facts show respondent has "an historic inability to resist the temptation to convert client funds." Finally, the committee indicated "[n]othing in mitigation supports a deviation from the sanction called for."
Under these circumstances, and in light of respondent's "multiple and intentional instances of a breach of the attorney trust account and substantial actual and potential harm to the public," the committee recommended respondent be permanently disbarred.
Respondent filed an objection to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
After reviewing the matter, the disciplinary board determined the hearing committee's factual findings do not appear to be manifestly erroneous. The board also determined the committee correctly applied the Rules of Professional Conduct, except that the board found respondent did not violate Rules 1.15(c), 1.15(d), or 1.15(e).
Specifically, the board determined respondent violated Rule 1.3 by failing to maintain, account for, and keep appropriate records of client funds in his trust *764 account and by failing to properly segregate those funds from his own. He violated Rules 1.15(a) and 1.15(b) by leaving his fees in the trust accounts and depositing his own money into the trust accounts, resulting in commingling of funds. He also violated Rule 1.15(a) by depositing client settlement funds into one trust account and disbursing the funds from the other trust account, resulting in conversion. Additionally, he set up automatic withdrawals from his trust accounts to pay personal and business expenses, resulting in conversion. However, the board noted the record does not show that client and third parties were not paid. The board also found that respondent's claim of ignorance of the trust accounting rules is not believable. The board further determined respondent violated Rules 8.4(b) and 8.4(c) by converting client funds. He additionally violated Rule 8.4(b) by engaging in prostitution, which constitutes criminal conduct. Furthermore, respondent violated Rules 1.5(f)(5) and 3.4(c) by failing to immediately refund the unearned portion of Ms. Woods' fee, despite being ordered to do so by the bankruptcy court. Additionally, respondent violated Rules 8.4(c) and 8.4(d) by deliberately delaying the refund to Ms. Woods.
With respect to Rules 1.15(c), 1.15(d), and 1.15(e) in Count I, the board determined respondent did not violate these rules because there is not clear and convincing evidence that he failed to deposit into or improperly withdrew from his trust accounts payments for advanced fees or expenses. There is also not clear and convincing evidence that respondent failed to notify clients or third parties of the receipt of settlement funds or promptly disburse the funds. Finally, the record does not contain complaints from clients or third parties that respondent failed to pay them.
After considering the above rule violations, the board concluded respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. He caused significant potential harm to his clients and third parties by mismanaging his trust accounts. He also caused actual harm to Ms. Woods and the legal system by failing to promptly refund the unearned fee. The board determined the "heartland" of respondent's misconduct is his mismanagement of his trust accounts, and the other misconduct only serves to enhance whatever sanction is appropriate for the trust account mismanagement. Upon review of the ABA's Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is disbarment.
The board found the following aggravating factors: prior disciplinary offenses, a dishonest or selfish motive (only with respect to Count III), a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and illegal conduct. Regarding mitigation, the board rejected the mitigating factor of mental disability or chemical dependency because respondent failed to establish a causal connection between his dependency and his misconduct. Instead, the board found respondent suffers from personal or emotional problems but assigned the factor very little weight because of the lack of a causal connection. See In re: Stoller, 04-2758 (La.5/24/05), 902 So.2d 981.
In addressing the issue of an appropriate sanction, the board reviewed the court's sanction guidelines for misconduct involving conversion of client funds as set forth in Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986). The board concluded "[t]here are a greater number of factors in this matter that are consistent with the three-year range provided by *765 Hinrichs, namely the lack of actual harm to the clients. However, the extensive duration of Respondent's conduct, the magnitude of the risk of damage to clients and third-parties, and the Respondent's prior discipline for similar misconduct pushes the matter into the disbarment range." The board determined, however, that permanent disbarment is not warranted under any of the permanent disbarment guidelines established by the court in Supreme Court Rule XIX, Appendix E.
Under these circumstances, the board recommended respondent be disbarred.
Respondent filed an objection to the disciplinary board's report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, the record reveals respondent mishandled his client trust accounts, resulting in commingling and conversion of funds. Respondent also engaged in a criminal act and failed to promptly refund a $100 unearned fee after he was ordered to do so by a bankruptcy judge. Based on this misconduct, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties to his clients, the public, the legal system, and the legal profession. He caused potential harm to his clients and third parties and actual harm to Ms. Woods and the legal system.
The following aggravating factors are present: prior disciplinary offenses, a pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law. The only mitigating factor supported by the record is respondent's personal and emotional problems.
We agree with the board that the "heartland" misconduct in this matter is respondent's mishandling of his trust accounts. Our 1986 opinion in Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986), is the landmark case in which the following range of sanctions was established for varying degrees of conversion of client funds:

*766 In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client's funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made. [Internal citations omitted.]
Following these guidelines, we find a three-year suspension is appropriate. Accordingly, we will suspend respondent from the practice of law for three years. Pursuant to Supreme Court Rule XIX, § 24(A),[6] the suspension shall be made retroactive to June 17, 2009, the effective date of respondent's interim suspension.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Jerome W. Dixon, Louisiana Bar Roll number 18587, be and he hereby is suspended from the practice of law for three years, retroactive to June 17, 2009, the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
CLARK, Justice, dissents in part with written reasons.
*767 CLARK, J., dissenting.
I respectfully dissent from the majority's holding that suspends respondent from the practice of law for a period of three years. Believing this sanction to be too lenient, I find disbarment to be appropriate. First, I find significance in respondent's extensive history of disciplinary conduct. He received a public reprimand in 1995 and engaged in misconduct that led to his transfer to disability inactive status in 1999, which was deferred for a two-year supervisory probation period with the LAP program. Respondent then experienced several relapses after maintaining sobriety for ten years, resulting in another LAP contract. Thereafter, in 2008, he was suspended from the practice of law again and placed on probation for neglecting a legal matter, altering a public record, and making a false statement to the Office of Disciplinary Counsel. Once more, he was placed on interim suspension in 2009. These numerous brushes with our disciplinary system provide ample evidence of a pattern of misconduct that is likely to be unchanged by rehabilitation efforts or time.
Presently, respondent is before this court due to allegations relative to the mismanagement of client funds, neglect of a client matter, and the commission of a criminal act. The hearing committee found respondent's testimony not to be credible regarding his alleged "inadequate knowledge" of the handling of trust accounts. The hearing committee discredited this assertion of ignorance due to his 1995 reprimand concerning the same issue, as well as his familiarity with this violation in 1999. The hearing committee stated respondent "has an historic inability to resist the temptation to convert client funds." It also found "[respondent's chance of relapse at this stage is fairly high and does not justify any further risk to the public." Moreover, the hearing committee found respondent acted intentionally with regard to his criminal conduct, which constituted a violation of Rule 8.4(b). I agree with the determinations made by the hearing committee. Lastly, I believe actual harm was caused to Ms. Woods and the legal system insofar as two and one-half years passed before responded paid Ms. Woods the court-ordered restitution.
Due to respondent's lengthy history of misconduct and his apparent inability to alter his misconduct, I adopt the recommendations of the hearing committee and the disciplinary board that a harsher sanction is warranted. Accordingly, I would disbar respondent.
NOTES
[1] Respondent's medical records indicate he smoked crack cocaine daily until he entered the facility. A doctor at the facility diagnosed respondent with cocaine dependency.
[2] Mr. Blackwell admitted that respondent commingled funds by leaving his fees in the trust accounts and, over time, writing smaller checks to himself or to pay personal expenses.
[3] The parties stipulated that the bankruptcy trustee and Mr. Harlan helped Ms. Woods with her paperwork and guided her through the process. They also stipulated that respondent arranged for other attorneys to handle most of his bankruptcy clients during this time period.
[4] In his letter to Ms. Woods, respondent stated, "My attorney has instructed me to send you this money order for $100.00. I honestly believe I gave you this amount in cash the last time we were in court for your case. I believe I am paying you twice, but my attorney has instructed me to pay you again and retain proof of payment."
[5] In In re: McClanahan, 09-1883, fn. 9 (La.2/5/10), 26 So.3d 756, the court established that disbarment, and not permanent disbarment, is the most serious sanction available as a baseline sanction.
[6] Supreme Court Rule XIX, § 24(A) provides, in pertinent part:

In matters where a lawyer who has been placed on interim suspension and is then suspended for the same misconduct that was the ground for the interim suspension, at the court's discretion, the lawyer's term of suspension may be applied retroactively to the effective date of the interim suspension.